PARRISH ELLIOTT v. THE STATE.

No. 1144.    Decided April 27, 1898.

**1. Unlawfully Carrying a Pistol—Evidence—Harmless Error.**

On a trial for unlawfully carrying a pistol, testimony by a certain female witness to the effect that she and her daughters were very much frightened when they saw defendant with his gun threatening her husband, is harmless error where the evidence in the case shows conclusively that defendant was also unlawfully carrying a pistol at the time on his person, and where it is also made to appear that the verdict assessed the lowest punishment affixed by law to the latter offense.

**2. Same.**

On a trial for unlawfully carrying a pistol, where the fact that defendant carried the pistol is conclusively established, testimony with regard to the compromise between the parties of a suit of forcible entry and detainer and the after partition of the property, is harmless error.

**3. Same—One's Own Premises—Occupancy by Tenant.**

On a trial for unlawfully carrying a pistol, where the evidence showed that the pistol was carried upon premises occupied by one H., who was a tenant by will of defendant, Held, H., the tenant, was the owner until his tenancy had been terminated by notice of the landlord to vacate; and the landlord would have no right of entry into said premises for any other purpose during the existence of the tenancy.

**4. Conflicting Evidence—Practice on Appeal.**

Where there is only a conflict in the testimony, the court, on appeal, will not disturb the finding of the jury.

APPEAL from the County Court of Burnet.    Tried below before Hon. J. A. CREWS, County Judge.

Appeal from a conviction for unlawfully carrying a pistol; penalty, a fine of $25.

The opinion states the case.

*Ike D. White* and *J. G. Cook,* for appellant.

*W. W. Walling* and *Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of carrying a pistol in violation of the law, and his punishment assessed at a fine of $25, and he appeals.

The defendant reserved an exception to the evidence of the State, introduced through the witness Mrs. Nance, in regard to seeing the defendant approaching her husband, in the field, with a gun, which she at first took to be a walking stick, and afterwards discovered to be a gun, and also that, when the defendant approached her said husband, he presented

the gun, and held it upon him in a shooting attitude; and, further, that portion of her evidence in which she states that she and her two daughters, who were also present, were very much frightened. If this testimony was irrelevant and inadmissible, there could have been no injury accruing to the appellant, because his punishment was assessed at the lowest fine, and no imprisonment was annexed to the punishment by the verdict. The same may be said of the testimony in regard to the compromise had between defendant and his wife, upon one side, and the witness Nance, upon the other, in a forcible entry and detainer suit, in which compromise they agreed to divide the premises at issue between the parties to said suit.

This case seems to have been fought largely in the trial court upon the theory that, if the property and premises at the point where the pistol was seen by the witness was the homestead of the defendant's wife, acquired by a former marriage, and she had not abandoned it, then the defendant would have a right to carry the pistol upon said premises; and, if she had abandoned said homestead as such, then he would not have that right. We believe this theory of the case is based upon false grounds. The testimony shows: That the defendant had married Mrs. Bird, whose former husband had left herself and children a homestead. Immediately upon her marriage with the defendant, they moved from Burnet County, and away from this homestead, into Williamson County, and upon a place then controlled by the defendant, and they have not since lived upon said homestead. That Mrs. Elliott, wife of defendant, rented the property, and applied the rents accruing to the payment of an old debt of herself and her former husband. The premises for the year 1896 had been in the possession of one Nance, in part, and one Harris, in part. Nance was a subrenter, but not from Harris. Both rental contracts terminated on the 1st of December, and the carrying of the pistol is alleged to have occurred about the 14th of December. Nance, prior to the termination of his rental contract, had purchased the interest of two of the Bird children, and was holding over by virtue of said purchase of said interest in the homestead indicated by the terms of the purchase. Harris was a tenant at will of the house he was occupying, and the relation of landlord and tenant at will had not been terminated, and Harris was still occupying as such tenant at will after the 1st of December. On the day that defendant is charged with having carried the pistol, he went to the residence of Harris, and, in company with Harris, proceeded to the field where Nance was plowing. There were present at the time Mrs. Nance, her two daughters, and a party named Malone. The defendant approached Nance with a Winchester rifle, and a difficulty ensued,—mainly, a quarrel. In putting his gun to his shoulder, the defendant raised his coat, and disclosed to Nance, Mrs. Nance, and Malone a pistol in the waistband of his pants, on the right side. As before stated, the issue was largely fought in the trial court upon the right of the defendant to enter the premises, because it was the homestead of Mrs. Elliott, and that she had not abandoned it as such a homestead. Under the view we take of the case, it was wholly immaterial whether she had or had not abandoned it as a homestead; and

we will therefore not discuss any of her homestead rights, or the relations that the parties occupied to the premises,—as to whether or not they had abandoned the homestead. Whatever rights she had in the premises under the rental contract would be the same whether it was the homestead or not. Defendant's right to visit the premises for the collection of rents, or making rental contracts, would be the same. If Harris was in possession of the house occupied by him as a tenant at will, or by suffrance, he had the right to control and hold said house until his tenancy at will had been terminated. There is no evidence in this record intimating that the defendant had gone to Harris to notify him that his tenancy was at an end. On the contrary, he went there for the purpose of forcing Nance to leave that portion of the property occupied by him. In Brumley v. State, 12 Texas Criminal Appeals, 609, the doctrine was announced that a tenant in possession of such premises is the owner thereof until the expiration of the lease. We take it that this rule would apply to a tenancy at will as well as a tenancy under the ordinary rental contract, and that, until that tenancy at will was terminated by the owner of the premises, such tenant could have all the rights of the premises as he would under any other character of tenancy, and that the landlord's right of entry, in that character of case, would be limited to the purpose of notifying the tenant that he must vacate the premises, or, in other words, that his tenancy at will was terminated. An entry upon the premises of Harris for any other purpose was not authorized. We do not hold, however, that he would have the right to carry a pistol, even under such circumstances. See Zallner v. State, 15 Texas Crim. App., 23 ; Brannon v. State, 23 Texas Crim. App., 428. Under this view of the case, the rights of the defendant in that portion of the premises occupied and claimed by Nance would be immaterial, and so would the questions suggested arising out of the homestead laws. The same may be said in regard to the possession of Nance. If the defendant carried the pistol at Harris' residence, he would be guilty, for he could not have carried it at the point where the witnesses saw the pistol without having brought it directly from Harris' residence. It was only a short distance between the two points, and the witnesses saw the defendant leave Harris' residence, and approach them through the open field, and there was no place at which he could or did secure the pistol. Therefore he must have had the pistol at Harris' residence, if he had it at all. The defendant requested the court to charge the jury that if he carried the pistol on property which belonged to himself and wife, and they had not parted with their right of possession of the same by lease to C. E. Harris or some other person, then he would be entitled to an acquittal. Had there been evidence in the case suggesting this phase of the law, the charge might have been required, but, under the facts, Harris was a tenant, and whether he was so by lease or not would make no difference. We are of opinion that the court's definition of the terms "his own premises" was sufficient. The testimony was conflicting as to whether or not the defendant had a pistol on his person. The witnesses for the State all testify that he did, and that they saw it. The defendant's two

witnesses, Harris and wife, testify that, if he had a pistol, they did not see it, and he was in his shirt sleeves at their residence before going down into the field where Nance and his family were. This made a conflict in the testimony. The jury believed the State's witnesses, which they had a right to do, and we see no reason for disturbing their finding. The judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]