## 48306. SCOTT v. THE STATE.

Clark, Judge. Defendant having been found guilty of criminal trespass appeals the trial court's denial of his motion for a new trial on general grounds and on the following special grounds: (a) Refusal to include in the charge to the jury defendant's written request that a trespasser when ordered to vacate the premises is entitled to be allowed sufficient time to do so; (b) the admission over objections of a physician's testimony relative to his observation of the prosecutrix eight hours after occurrence of the incident; and (c) the trial court's manner of making inquiry concerning alleged misconduct by a juror in having had communication with the prosecutrix' mother during a recess and the denial of a mistrial motion based thereon.

1. Our Rule 18 (c) (2) provides: "Any enumerated error which is not supported in the brief by citations of authority or argument shall be deemed to have been abandoned." In accord is *Abrams v. State,* 223 Ga. 216 (6) (154 SE2d 443); *Schmid v. State,* 226 Ga. 70 (172 SE2d 616); *Garrett v. State,* 126 Ga. App. 83, 84 (189 SE2d 860). Accordingly, we must treat the enumeration based on the overruling of the general grounds as having been abandoned.

2. Defendant argues the trial court erred in failing to charge defendant's written request that "It is being contended by the defendant that he, after being asked to leave, immediately departed. If you find this to be the fact, I charge you that even a trespasser, where he is rightfully ordered to leave a building by one having the premises in charge, is entitled to be allowed such time as is necessary to enable him to make his exit from the room or building he is ordered to vacate."

Although this request is based upon *Hollis v. State,* 13 Ga. App. 307 (79 SE 85) it is not applicable to the charge upon which defendant was tried. The instant accusation was based upon that portion of subparagraph 2 of paragraph (b) of § 26-1503 of the Criminal Code which reads: "A person commits criminal trespass when he knowingly and without authority . . . enters upon the land or premises of another person . . . after receiving, prior to such entry, notice from the owner or rightful occupant that such entry is forbidden." This differs from subparagraph 3 of paragraph (b) of that same code section which deals with a person remaining upon land "after receiving notice from the owner or rightful occupant to depart." The difference between the two offenses lies in the time of the giving of the notice. The latter deals with a lawful entry and remaining on the premises *after* having been directed to leave. The first applies where notice forbidding entry is given *before* the accused goes upon the premises.

The defendant's statement that he left immediately on request would create an issue under Code Ann. § 26-1503 (b) (3) as being after an entry with consent but is not germane and is not an issue under subparagraph (b) (2) where the essence of the offense is prior notice denying entry.

"The trial court did not err in refusing to give a request to charge which, while in language stated by the Supreme Court and approved by both appellate courts in previous cases, was not particularly adjusted to facts and issues in the present case." *Atlanta &c. Casket Co. v. Hollingsworth,* 107 Ga. App. 594, 595 (131 SE2d 61). The trial court was correct in refusing this request.

3. Defendant contends the trial court erred in permitting the family physician to testify as to the mental state of the prosecutrix when he examined her in his office some eight hours after the incident. Prior to the doctor taking the stand the defense attorney expressed his objections to the forthcoming testimony in the form of an argument. These statements are

summarized in the enumeration or error thusly: "The testimony having no probative value with respect to the offense being tried, to wit, 'criminal trespass' and such testimony being hearsay, irrelevant and so prejudicial in character as to deny defendant due process of law."

To determine the correctness of the trial court's ruling in admitting the doctor's testimony it is necessary to summarize the state's case. Prosecutrix was a 19-year-old female residing with her infant in one apartment of a duplex residence. She testified that on the day prior to the occurrence of the alleged offense she had a street conversation with the defendant who resided across the street and who had been a fellow employee of the brother of prosecutrix. By reason of the relationship with the brother accused had on one occasion previously been in the apartment of prosecutrix some time prior to the date of the incident. Her testimony was that this street conversation had included repeated requests from defendant asking if he could come and sit in her living room some night. She stated the requests were directly refused. The conversation caused prosecutrix to be fearful of a subsequent uninvited visit over her objections, she expressing her fears to her neighbor, her mother, and a friend on the day the conversation occurred. During the pre-dawn hours of the next day, the evidence establishing the time as being between 3 a. m. and 3:30 a. m., prosecutrix was awakened by the sound of footsteps in her apartment. She sat up in bed and saw the defendant through the open door in her bedroom. She began screaming "Get out " to which the defendant replied "Don't get upset" and "I am not going to hurt you." She continued her screaming of "Get out, get out" and the defendant voluntarily left without in any way harming the prosecutrix. Distraught and hysterical the prosecutrix went next door to her neighbor and related the incident. Police officers were summoned and their investigation disclosed that the rear door of the prosecutrix's apartment bore evidence that it had been freshly tampered with and there were no such marks on the lock of the front door.

Defendant by his sworn testimony admitted entry on the premises stating that he had been to a party which had ended some time after midnight and that he decided to visit the prosecutrix' brother. "I knocked on the front door and I knocked on the back door. And when I went to the front door, now, somebody said, 'Come in.' So, I didn't go in. I knocked again. Somebody said, 'Come in,' you know. So I just twisted the door knob, and I just

made one step in. And then I didn't see nobody, and I didn't see a soul. She said she screamed, 'Get out!' She didn't scream. She said, 'Get out. Get out. Get out.' Like that. Three times. And I just turned around and left." (T. 120).

In his sworn testimony he also denied that the street conversation of the prior day with prosecutrix had been relative to his desiring to visit prosecutrix but concerned inquiries from him relative to the whereabouts of the brother whom he had not seen in some time.

Essential to establishment by the state of the offense charged against defendant was a showing that his entry into the apartment had previously been expressly forbidden. The mental condition of the prosecutrix as shown by her demeanor before and after the incident would cast light upon this essential element. Accordingly, it was relevant as supporting the position of the prosecutrix that she had denied defendant permission to visit her and that the unauthorized pre-dawn entry frightened her and lent credence to her version that defendant remained about five minutes. It also cast light on her contradiction to defendant's testimony as to the conversation and as to the manner of entry.

Because the doctor's testimony was based upon his personal observation it was not hearsay. Some of the doctor's testimony with reference to his own experience with a break-in would have been inadmissible but was the result of cross examination. Accordingly it came within the holding of *Thomas v. State*, 213 Ga. 237 (98 SE2d 548) and citations therein, that "[I]t is a settled rule of practice in this state that, where counsel elicits testimony unfavorable to his client, he will not be heard to object to it, no matter how prejudicial it may be, if it is a direct and pertinent response to the question propounded."

4. The remaining assignments of error (Enumerations No. 3, 4 and 5) aver prejudicial error by the trial judge in his investigation of defendant's accusation of alleged misconduct by a juror and in the court's rulings thereon. The charge was made by a report from the defendant and his counsel that as the jury was leaving the courthouse the previous evening for an over-night recess one of the jurors had been seen talking with the prosecutrix' mother who had been a witness for the state. This allegedly happened in the vestibule as the jurors were departing from the courthouse for their homes. The usual judicial directive against illegal contacts with the jurors had previously been given but was once

more specifically restated at the time the recess announcement was made for deliberations to be discontinued until the following morning.

We have carefully reviewed the record (T. 183-191) showing the defendant's accusation and the manner in which the trial judge conducted his inquiry. First, in the absence of the jury he questioned the mother. She stated her denial and gave the details as to her activities during the time when the jury was leaving the courthouse. He next made both a general and specific inquiry of the twelve jurors as a group. He asked of the twelve laymen if any of them had observed any state witness talking to any juror. Then pointing to the mother who had been permitted to remain in the courtroom over defendant's protest he asked "Do any of you recall being in the foyer or vestibule and have (this witness) say anything to you?" (T. 186). Receiving a negative answer the judge then retired the jurors with the exception of the particular juror who had been designated as having had the contact. This juror was then cross examined by defense counsel. In his answers he reviewed in detail his activities and expressly denied the witness having made any statement to him while he was leaving the courtroom. Defense counsel then inquired if his having been singled out for this inquiry would cause him to be prejudicial. His answer was "I think that this is just something that somebody made a mistake somewhere. It would be an honest mistake. I wouldn't hold it against anyone. Now mistakes like this—they are made. It was an honest mistake, and I wouldn't hold it against anyone." (T. 189). The court then made its ruling to the effect that no communication had occurred and emphasized to the specified juror that there was no intent to humiliate him to which the juror replied "I certainly believe this, Your Honor. I think it was just an honest mistake, and I don't feel anyone was trying to humiliate me." (T. 189). Thereupon a mistrial motion was made which was overruled.

"Under the decisions of the Supreme Court in *Weatherby v. State,* 213 Ga. 188, 197 (97 SE2d 698), and *Morakes v. State,* 201 Ga. 425 (3) (40 SE2d 120), where as here, there was conflicting evidence presented to the trial court as to the conduct of the juror and the trial court must pass on the issue, and its discretion is not shown to have been abused, such discretion will not be controlled by the reviewing court." *Royal Crown Bottling Co. v. Bell,* 100 Ga. App. 438, 440 (111 SE2d 734). See *Shivers v. State,* 181 Ga. 557, 562 (183 SE 489). In accord are *Tolbirt v. State,* 124 Ga. 767 (53 SE

327); *Smith v. Tindol,* 179 Ga. 801 (3) (177 SE 588); and *Watkins v. State,* 63 Ga. App. 282, 284 (11 SE2d 62).

We find no merit in enumeration No. 4 concerning the denial of defendant's motion for mistrial nor in the 5th enumeration attacking the manner in which the trial judge conducted the inquiry concerning the alleged misconduct.

Enumeration No. 3 contended the mother should have been sequestered during the misconduct investigation. We rule adversely to appellant on this point as an individual charged with having committed an offense is entitled to remain in the courtroom during the interrogation providing she testifies prior to hearing the other witnesses. See *Tift v. Jones,* 52 Ga. 538, 542. Her presence after her testimony did not prejudice defendant as might have occurred if she had been permitted to hear all of the other witnesses before she gave her version. Additionally, she was the accused party and would have been subject to contempt of court if the charges had been proven. As an individual charged with having committed the offense being investigated by the court she was entitled to remain in the courtroom during the inquiry as to her conduct providing she is required to testify prior to the other witnesses.

*Judgment affirmed. Hall, P. J., and Evans, J., concur.*

Submitted July 9, 1973 — Decided October 25, 1973.

*Thomas M. Jackson,* for appellant.
*Austin J. Kemp, II, Solicitor,* for appellee.