

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00052-CR

_____

SHELLEY DENISE MUNNS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Van Zandt County, Texas
Trial Court No. 2012-00174

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

## O P I N I O N

## I.    Procedural Backgound

Shelley Denise Munns appeals her conviction by a jury of criminal trespass.  The trial court sentenced Munns to ten days' confinement, suspended the sentence, and placed Munns on one year of community supervision.  Munns raises two issues:  (1) the evidence of her guilt is insufficient and (2) the trial court erred in finding Munns had sufficient resources to offset the costs of her court-appointed counsel.[1]  When the State's brief was fifty-two days overdue and no motions for extensions had been filed by the State, we submitted, with notice to the State, this case on the appellant's brief alone.  Because the State failed to prove Munns had notice that her entry was forbidden, we conclude the evidence is insufficient.

## II.    Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt.  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd).  We examine legal sufficiency under the direction of the *Brooks* opinion while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).  We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007);

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### III. Factual Background

Munns was charged with entering the property of another without effective consent and with notice that the entry was forbidden.[2] *See* TEX. PENAL CODE ANN. § 30.05(a). Randall Gunter manages rental houses for his mother. Gunter testified the house in question had been leased for a month by a woman named Jennifer Simmons. Although Munns was present when Simmons and Gunter met at the property, only Simmons and her children were listed as occupants on the lease. A month later, Simmons informed Gunter that she would not continue the lease for a second month and requested return of her security deposit. Gunter met Simmons in front of the Wills Point Police Department and returned her deposit. Simmons, though, only returned one of the two keys Gunter had provided to the house.

Although he normally changes the locks immediately after a tenant departs, Gunter was recovering from back surgery and did not change the locks after Simmons' departure. Instead, Gunter requested that his son "go by that house and make sure nobody was in the house because

---

[2]The offense of criminal trespass contains two statutory alternatives: (1) entry with notice that entry was forbidden and (2) remaining after receiving notice to depart. *See* TEX. PENAL CODE ANN. § 30.05(a) (West Supp. 2012). Because the State only alleged the first of these statutory alternatives, the State is bound by its allegation. *See Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) ("[T]he failure to prove the statutory language pled renders the evidence legally insufficient to support the conviction."); *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001) ("[W]hen the controlling statute lists several alternative acts intended by the defendant and the indictment limits the State's options by alleging certain of those intended acts, the hypothetically correct charge should instruct the jury that it must find one of the intended acts alleged in the indictment."); *see, e.g., Martin v. State*, No. 07-11-00102-CR, 2012 Tex. App. LEXIS 2587, **5–6 (Tex. App.—Amarillo Mar. 30, 2012, no pet.) (mem. op., not designated for publication) (evidence legally insufficient when State alleged entry theory but proved remain theory).

there wasn't supposed to be anybody in the house." When Gunter's son reported that the lights were on at the house, Gunter gave the police permission to enter the house.

Officer Alicia Nicole Griffin Hopkins, a police officer with the Wills Point Police Department, was dispatched to the residence. Hopkins testified that Gunter requested she enter through a damaged side door. Upon entering the residence, Hopkins discovered Munns and Bobby Garner in the bedroom. A mattress was on the floor. Hopkins arrested both for criminally trespassing. Hopkins testified that Munns claimed to have been given permission to use the home by a friend who was renting the house. Gunter testified that he had known Munns all of his life and had never given her permission to live or stay in the house.

## IV.    Arguments and Analysis

### A.    Variance

Munns first argues that a material variance existed because the evidence does not establish when Munns entered the house and Munns' entry could have occurred when Simmons' lease was still in effect. Munns argues that since the lease was terminated the day before Munns' arrest,[3] it is possible that Munns entered the premises while Simmons had the exclusive right to possess the premises. Munns cites *Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011), in support of her position that Simmons had the exclusive right to possession of the residence.

While a tenant would have the exclusive right to designate those authorized to use the residence under some leases, there is evidence that this lease restricted Simmons' right to make

---

[3]The record does not clearly establish the time lapse between termination of the lease and the arrest. It appears that Munns was arrested shortly after the termination, but the record does not establish the exact timing of the two events.

4

such determinations. A lease normally transfers the exclusive right of possession of the leased premises from the landlord to the tenant. *See, e.g.*, *Mobil Pipe Line Co. v. Smith*, 860 S.W.2d 157, 159 (Tex. App.—El Paso 1993, writ dism'd w.o.j.) ("The tenant may exclude third persons including the landlord."); *Elliott v. State*, 45 S.W. 711, 712 (Tex. Crim. App. 1898) (tenant had exclusive right of possession until expiration of lease and could exclude landlord); *cf. Chapman v. United States*, 365 U.S. 610, 616 (1961) (landlord normally lacks authority to consent to search of leased premises). However, the exclusive right of possession does not excuse the tenant from complying with the terms of the lease. Gunter testified that he does not give his tenants permission to "move other individuals into the house" who are not listed on the lease.[4] Viewed in a light most favorable to the verdict, the terms of the lease, as described by Gunter, prohibit Simmons from allowing Munns to occupy the residence.

## B. Notice that Entry Was Forbidden

We agree with Munns, though, that the State failed to meet its burden of proof. While the State presented sufficient evidence for a reasonable juror to conclude, beyond a reasonable doubt, that Munns lacked any legal right to be in the dwelling, the State failed to present sufficient evidence that Munns had notice that her entry was forbidden. At trial, the State argued that Munns had notice her entry was forbidden because the habitation was locked, Munns was not listed on the lease, and Simmons had vacated the premises.

---

[4]The lease was not introduced into evidence. Munns, though, does not argue that Gunter's conclusion is incorrect or that the lease terms were invalid under the Fair Housing Act or Chapter 92 of the Texas Property Code. 42 U.S.C. §§ 3601–3631 (2012) (prohibiting discrimination in sale or lease of residential housing on basis of race, color, religion, sex, handicap, familial status, or national origin); TEX. PROP. CODE ANN. §§ 92.001–.354 (West 2007 & Supp. 2012).

### 1. Locked Habitation

The issue here is not whether Gunter had a right to evict Munns, but whether Munns had notice that her entry into the house was forbidden. The doors to the residence were locked. The locks would be sufficient notice to a naked trespasser that entry was forbidden. *See* TEX. PENAL CODE ANN. § 30.05(b)(2) (West Supp. 2012). The inherent nature of a habitation gives notice that entry is forbidden. *Salazar v. State*, 284 S.W.3d 874, 878 (Tex. Crim. App. 2009).

The record, though, contains evidence that Munns was not a naked trespasser. It is undisputed that Munns had a key to the habitation. Gunter testified Munns had a key to the dwelling which she returned to him the night of her arrest. Munns informed Hopkins that a friend had given her permission to use the dwelling. While a locked door would certainly qualify as notice to a naked trespasser, a locked door is not notice that entry is forbidden to a person who is provided a key by one with apparent authority to authorize his entry into the residence. *Nixon v. Sipes*, 667 S.W.2d 223, 224 (Tex. App.—Texarkana 1984, writ ref'd n.r.e) (consent to enter property may be by actual or apparent authority); *see, e.g.*, *Springsteen v. State*, No. 12-03-00366-CR, 2005 Tex. App. LEXIS 1442 (Tex. App.—Tyler Feb. 23, 2005, no pet.) (mem. op., not designated for publication) (defendant having been given key to house by owner had no reason to believe he no longer had permission to stay).

The evidence shows that Munns entered the property with the permission of a tenant. Munns had possession of a key to the locked house, Munns was with Simmons when Simmons rented the house from Gunter, and Munns told Hopkins she acquired the key from her friend who gave her permission to stay at the residence. There is no contrary evidence. Simmons did not

6

testify at trial, and Hopkins testified that she did not contact "the person that Ms. Munns claimed gave her permission to be at" the residence. Gunter testified that he had not been contacted by Simmons.

### 2. Lease Terms

Gunter testified that he does not give his tenants permission to "move other individuals into the house" who are not listed on the lease. The record, though, contains no evidence that Munns was aware of this lease term. Again, the issue is not whether Munns had a legal right to be on the premises but whether Munns entered while knowing she did not have a legal right to be on the premises.

The State argued that because Munns was not named on the lease, Munns had notice she had no legal right to be on the presmises. Although the record establishes that Munns was present when Gunter met Simmons at the residence, there is no evidence that Munns had notice she could not live or stay in the residence. Gunter testified that Munns was present at the meeting but did not testify that the lease was signed at this meeting or that Munns reviewed the lease. When a landlord leases a property, the landlord transfers the right to possess the property to the tenant. *See Mobil Pipe Line*, 860 S.W.2d at 159. Unless the terms of the lease specify otherwise, a tenant has the right to allow overnight guests to stay on the leased premises and can even sublease the premises. For the terms of the lease to function as notice, there must be evidence that Munns knew those terms.

We note that Gunter testified, "Ms. Simmons was on the understanding that Shelly was not going to be living in that house, as you will see in the affidavit from the Wills Point water

affidavit."[5]   This understanding, though, assuming such existed, was between Simmons and Gunter.  There is no evidence in the record that Munns and Gunter agreed that Munns was not to live or stay in the residence.  The record also lacks any evidence that Munns knew of such an agreement between Gunter and Simmons.  In fact, Gunter affirmatively denied ever discussing with Munns whether she could live or stay at the house.  When asked, "Had you ever discussed her living or staying in that house," Gunter replied, "No, sir."

### 3.  Tenant Had Vacated

During closing argument, the State argued that the "majority of [Simmons'] belongings were out of the house" and that Simmons had vacated the premises two weeks prior to Munns' arrest.  Neither statement is supported by the record.

There is no evidence that Munns knew Simmons had terminated the lease.  The record does not establish when the lease was terminated.  Gunter testified he met Simmons in front of the police station to return her deposit.  The electricity was still on in the house, but Gunter was not sure whether the water was still on.  Gunter acknowledged that Munns told him she did not know that Simmons had vacated the house.  Without evidence that Munns knew Simmons had terminated the lease, notice that entry was forbidden cannot be inferred from the termination of the lease.

In essence, the State argued at trial that Munns had notice the lease had been terminated because Simmons was in the process of moving out.  Such a conclusion, though, is mere speculation.  Gunter testified that at the time of Munns' arrest, there was a "couch, a lamp, phone

---

[5]The exact nature of this understanding is not clear.  The water affidavit apparently identified the tenant but was not introduced into evidence.  Gunter testified that he completed the water affidavit.

cord stretched across the room into the bedroom, a bed on the floor in the back bedroom, along with a few dishes and stuff in the kitchen."[6]   Gunter testified that he did not know who owned the belongings at the house.  Although he testified that he let someone into the house to claim the belongings, Gunter did not specify who that person was.  There is no evidence of the ownership of the items in the home or that Simmons ever removed any belongings from the residence.  The conclusion that Munns had notice because the majority of Simmons' belongings had been removed is unsupported by the evidence.

The State is not required to disprove every reasonable alternative hypothesis.  *See Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd).  The State, however, must prove guilt beyond a reasonable doubt.  The Texas Court of Criminal Appeals has recognized that a conclusion supported only by speculation is not sufficient to support a finding beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013).  The court explained the difference between reasonable inferences and speculation as follows:  "'[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them,' while '[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented.'" *Id*. (quoting *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007)).

Proof that a person lacked the legal right to be on a property is not sufficient to prove criminal trespass; the State must also prove notice.  *Gornick v. State*, 947 S.W.2d 678, 680 (Tex. App.—Texarkana 1997, no pet.) ("If a person is acting under a bona fide claim of right, albeit ill-

---

[6]Hopkins did not recall seeing a couch and did not look in the closets.

founded, he is not guilty of a crime. If the act is not in fact legally justified, it may constitute a trespass that can be redressed by civil remedies, but it is not a crime."). Although reasonable inferences may be made, bare speculation is not sufficient. A finding that Munns had notice that her entry onto the property was forbidden is speculation, not a logical consequence. The record contains no communication that informed Munns her entry was forbidden. Munns had a key to the premises and claimed to have been given permission to stay there, presumably by Simmons, who had been a legal tenant. There is no evidence Munns knew the terms of the lease, which purportedly prohibited overnight guests or subleases. There is no evidence Munns knew of an understanding between Simmons and Gunter that Munns was not to stay at the residence. Finally, there is no evidence Munns knew Simmons terminated the lease. The record contains only a suspicion that Munns had notice, not proof beyond a reasonable doubt.

A reasonable juror could not have concluded beyond a reasonable doubt that Munns had notice that her entry was forbidden. The evidence is legally insufficient. Because Article 26.05(g) of the Texas Code of Criminal Procedure only authorizes court-appointed attorney's fees to be assessed as court costs if the defendant is convicted, it is not necessary to address Munns' challenge to the attorney's fees. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2012).

10

We reverse Munns' conviction for criminal trespass and render a judgment of acquittal.


Jack Carter
Justice


Date Submitted:    September 3, 2013
Date Decided:     September 17, 2013

Publish