**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 18, 2016**

# In the Court of Appeals of Georgia

A16A1008. HARPER v. THE STATE.

ANDREWS, Presiding Judge.

David Lamar Harper appeals pro se from the judgment of conviction entered on jury verdicts finding him guilty of two counts of criminal trespass in violation of OCGA § 16-7-21 (a) and (b) (2). For the following reasons, we affirm the conviction for violation of OCGA § 16-7-21 (a) and reverse the conviction for violation of OCGA § 16-7-21 (b) (2).

The state produced the following evidence: Harper was acting alone as a bail recovery agent for a professional bondsman when he entered the residence of Tina McDaniel through a locked door, without McDaniel's knowledge or permission, and arrested Stephen Collier inside the residence on behalf of the bondsman for the purpose of surrendering Collier to state custody because his criminal bond had been

forfeited. At the time of Harper's intrusion, McDaniel was changing clothes in her bedroom when she heard her daughter scream, and she ran to find Harper inside her residence holding Collier to the floor while handcuffing him. McDaniel asked Harper who he was, and Harper responded that "he was Houston County." Based on this response, McDaniel mistakenly thought that Harper was a Houston County police officer. Harper never identified himself as a bail recovery agent. Collier did not reside at the McDaniel residence – he was an acquaintance of McDaniel who was at the residence that day to perform work on a vehicle located at the residence. Before taking Collier from the residence, Harper told McDaniel that he had come in through the back door, and that she "might need to get [her] door fixed." Photographs of the door showed the property damage caused by Harper when he entered the residence through the locked door. After McDaniel reported the intrusion to police, Harper was arrested and charged with two counts of criminal trespass.

1. Even assuming (without deciding) that there was compliance with the licensing, registration, and other requirements for bail recovery agents (see OCGA §§ 17-6-56 through 17-6-58), there is no merit to Harper's contention that his conduct as a bail recovery agent justified his entry into the residence without McDaniel's consent for the purpose of seizing and arresting Collier on the forfeited criminal

2

bond. Accordingly, there is no merit to Harper's contention that justification (see

OCGA § 16-3-20) was a complete defense to his prosecution for criminal trespass.

In the event of a forfeiture on a criminal bond by a defendant, a professional

bondsman acting as a surety on the bond has the right to arrest and surrender the

defendant into the state's custody, and may hire a bail recovery agent for that purpose.

See OCGA §§ 17-6-54 to 17-6-58; 17-6-70 to 17-6-71. The bondsman's right to

arrest the defendant arises from the bond agreement between the bondsman and his

principal, the defendant. *McCoy v. Johnson*, 176 FRD 676, 679 (N.D. Ga. 1997);

*Raburn Bonding Co. v. State*, 244 Ga. App. 386, 388 (535 SE2d 763) (2000).

> When a person is arrested and released on bond, he is transferred from the custody of the sheriff to the custody of the bondsman. The control of a bondsman over his principal is "a continuance of the original imprisonment." *Taylor v. Taintor*, 83 U. S. 366, 370, 21 L.Ed. 287 (1872); *Coleman v. State*, 121 Ga. 594, 597, 49 S.E. 716 (1905). Therefore, "when a prisoner is out on bond he is still under court control, though the bounds of his confinement are enlarged. His bondsmen are his jailers." *Carlson v. Landon*, 342 U. S. 524, 547, 72 S.Ct. 525, 538, 96 L.Ed. 547 (1952). The bondsmen have an interest in ensuring that the principals appear in court, because if they do not appear then the bond will be forfeited. As a result of their custody, bondsmen "have their principal on a string, and may pull the string whenever they please, and render him in their discharge." *Taylor*, 83 U. S. at 371. If the principal refuses to surrender, the bondsman under common law can lawfully arrest him and return him to the sheriff's custody. Id. at 371; *Clark v. Gordon*, 82 Ga. 613, 616, 9 S.E. 333 (1889); *Bennett v. State*, 169 Ga. App. 85, 311 S.E.2d 513 (1983). See

3

> *Gray v. Strickland*, 163 Ala. 344, 50 So. 152, 153 (Ala. 1909). Further, the common law conferred on bondsman broad powers with which to effectuate their seizures of principals. As the Supreme Court stated in *Taylor*, bondsmen: "may exercise their rights in person or by agent. They may pursue [the principal] into another State; may arrest him on the Sabbath; and, if necessary, *may break and enter his house for that purpose.* The seizure is not made by virtue of new process. None is needed. It is likened to rearrest by the sheriff of an escaping prisoner." *Taylor*, 83 U. S. at 370 [(emphasis supplied)].

*McCoy*, 176 FRD at 679-680. Under the above authorities, the bond agreement between Collier and the bondsman carried with it Collier's implied consent that the bondsman or Harper (as the bail recovery agent) may use reasonable force necessary to arrest Collier on a forfeited bond, including the use of reasonable force to enter *Collier's residence* for that purpose. *Bennett*, 169 Ga. App. at 85-86; see *State v. Burhans*, 89 P3d 629, 634 (Kan. 2004); *State v. Mathis*, 509 SE2d 155, 160 (N.C. 1998); *People v. Oram*, 217 P3d 883, 889-890 (Colo. App. 2009); *Fitzpatrick v. Williams*, 46 F2d 40, 40 (5th Cir. 1931). But nothing in the bond agreement between the bondsman and Collier can be construed to provide authority for the bondsman, or the bondsman's agent, to enter McDaniel's residence (where Collier did not reside) without obtaining McDaniel's consent. *Mathis*, 509 SE2d at 161; *Burhans*, 89 P3d

at 634.[1] Our decision in *Mease v. State*, 165 Ga. App. 746 (302 SE2d 429) (1983), did not hold otherwise. In that case, we concluded that the evidence did not support a finding that licensed bondsmen acted with an "unlawful purpose" in violation of OCGA § 16-7-21 (b) (1) when they entered the residence of a third party to arrest the defendant on a forfeited bond, but we specifically declined to address the question of whether or not the bondsmen entered the residence without authority. Id. at 747-748. We find in the present case that, acting as the bondsman's bail recovery agent, Harper had no authority to enter McDaniel's residence for the purpose of arresting Collier without first obtaining McDaniel's consent.

2. Nevertheless, we find that Harper's criminal trespass conviction for violation of OCGA § 16-7-21 (b) (2) must be reversed because the State failed to produce evidence sufficient to establish the essential element of notice set forth in the charged offense.

---

[1] "When bondsmen unilaterally apprehend their principals without any assistance from law enforcement officials, courts have consistently found them not to be state actors." *McCoy*, 176 FRD at 682. Because there is no evidence in this case that Harper acted with assistance from law enforcement officials, Fourth Amendment requirements applicable to state actors are not implicated. See *United States v. Steiger*, 318 F3d 1039, 1045 (11th Cir. 2003); *Landry v. A-Able Bonding, Inc.*, 75 F3d 200, 204-205 (5th Cir. 1996); *Jaffe v. Smith*, 825 F2d 304, 307-308 (11th Cir. 1987); *Loden v. State*, 199 Ga. App. 683, 687 (406 SE2d 103) (1991).

Under the relevant provisions of OCGA § 16-7-21 (b) (2),

> A person commits the offense of criminal trespass when he or she knowingly and without authority . . . [e]nters upon the . . . premises of another person . . . after receiving, prior to such entry, notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant that such entry is forbidden. . . ."

To be found guilty of this offense requires proof that the accused entered knowingly and without authority after having received *express* notice that the entry was forbidden. *Wood v. State*, 227 Ga. App. 677, 678 (490 SE2d 179) (1997); *Scott v. State*, 130 Ga. App. 75, 78 (202 SE2d 201) (1973) (essential element was "showing that [defendant's] entry into the [premises] had previously been expressly forbidden."); *Osborne v. State*, 290 Ga. App. 188, 189 (665 SE2d 1) (2008) (essential element was showing that entry had previously been "expressly forbidden."). Express notice is required because "[i]nherent in the statute's notice provision is a requirement that notice be reasonable under the circumstances, as well as sufficiently *explicit* to apprise the trespasser what property he is forbidden to enter." *Rayburn v. State*, 250 Ga. 657, 657 (300 SE2d 499) (1983) (emphasis supplied). As the Supreme Court stated in *Murphey v. State*, 115 Ga. 201, 202 (41 SE 685) (1902), "it ought in every case of this kind to be made to clearly appear, not only that the notice [not to enter]

6

given to the accused was intended to apply to the particular [premises] alleged to have been unlawfully entered upon, but also that such notice was conveyed to him *by language sufficiently explicit* to enable him to so understand." (emphasis supplied). The State failed to produce any evidence showing that Harper was given the required prior express notice not to enter McDaniel's premises. The State's allegation and proof that Harper was given prior "constructive notice" not to enter the premises when he entered without permission through a locked door was not sufficient to establish the prior express notice required for violation of OCGA § 16-7-21 (b) (2).

3. Harper was also convicted of criminal trespass by violation of OCGA § 16-7-21 (a) which provides in relevant part that: "A person commits the offense of criminal trespass when he or she intentionally damages any property of another without consent of that other person and the damage thereto is $500.00 or less. . . ." Evidence that Harper damaged a door to McDaniel's residence when he entered without permission, including testimony and photographic evidence proving the damage, was sufficient to support the jury's guilty verdict on this offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

4. To the extent Harper contends the trial court erred by failing to give a requested instruction to the jury that, as a bail recovery agent, he was justified based

7

on lawful authority – the same authority as a law enforcement officer with a warrant – to forcibly enter McDaniel's residence to arrest Collier on the forfeited criminal bond, we find no error. Because Harper failed to object, his contention is limited to a plain error analysis – whether there was error, whether the error was obvious, and whether it likely affected the outcome of the proceedings. *Guajardo v. State*, 290 Ga. 172, 176 (718 SE2d 292) (2011). As set forth in division 1, supra, in the absence of any evidence that Collier resided at the residence, Harper had no authority to enter McDaniel's residence without McDaniel's permission. We find no plain error in the trial court's failure to give the instruction.

Having affirmed Harper's conviction under OCGA § 16-7-21 (a) and reversed his conviction under OCGA § 16-7-21 (b) (2), we vacate the sentence and remand the case for resentencing.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded for resentencing. Doyle, C. J., and Ray, J., concur.*