303 Ga. 144
FINAL COPY

S17G0199. THE STATE v. HARPER.

MELTON, Presiding Justice.

We granted certiorari in this case to decide whether a locked entry door to a homeowner's residence provides sufficient notice to a would-be trespasser that he or she is forbidden from entering the premises. See OCGA § 16-7-21 (b) (2). In Harper v. State, 338 Ga. App. 535 (790 SE2d 552) (2016), the Court of Appeals held that David Harper, a bail recovery agent, could not be found guilty of trespass under OCGA § 16-7-21 (b) (2) as a matter of law after he entered the residence of Tina McDaniel through a locked door from her back yard without McDaniel's knowledge or permission to arrest Stephen Collier, a man whose criminal bond had been forfeited. Harper gained access to the residence by either reaching his hand through a doggy door attached to the larger locked door and unlocking it, or crawling through the doggy door to do so. Collier did not live at the house, and was there only to work on a vehicle. And Harper was a

stranger to McDaniel, as he had not been given any access to McDaniel's home on any prior occasion and had no prior relationship with her. The Court of Appeals concluded that, because a finding of guilt under OCGA § 16-7-21 (b) (2) "requires proof that the accused entered [the premises in question] knowingly and without authority after having received *express* notice that the entry was forbidden," and because "[t]he State failed to produce any evidence showing that Harper was given the required prior express notice not to enter McDaniel's premises," Harper could not be found guilty of criminal trespass under the statute. (Citations omitted; emphasis in original.) Harper, supra, 338 Ga. App. at 538-539 (2). We granted the State's petition for certiorari in this case to evaluate the propriety of the Court of Appeals' ruling on the sufficiency of the notice given, and, because we conclude that the locked door to the residence provided reasonable and sufficiently explicit notice to Harper that entry into McDaniel's residence was forbidden under the circumstances of this case, we must reverse.

OCGA § 16-7-21 (b) (2) provides:

A person commits the offense of criminal trespass when he or she knowingly and without authority . . . [e]nters upon the land or premises of another person . . . after receiving, prior to such entry, notice from the

2

owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant that such entry is forbidden[.]

With respect to the type of notice that must be given to sufficiently inform a potential trespasser that entry is forbidden, for over forty years, the Court of Appeals has held that, "[e]ssential to establishment by the state of [criminal trespass under OCGA § 16-7-21 (b) (2)] against [a] defendant [is] a showing that his entry into the [premises] had previously been *expressly* forbidden." (Emphasis supplied.)  Scott v. State, 130 Ga. App. 75, 78 (3) (202 SE2d 201) (1973); Sheehan v. State, 314 Ga. App. 325, 326 (723 SE2d 724) (2012) ("Essential to establishment by the state of the offense charged was a showing that [the defendant's] entry into the premises had previously been *expressly* forbidden.") (footnote omitted; emphasis in original); Osborne v. State, 290 Ga. App. 188, 189 (665 SE2d 1) (2008) (State must show that the defendant's "entry into the premises had previously been *expressly* forbidden.") (citation and punctuation omitted; emphasis in original).

However, this Court has held that notice need only be explicit, not express:

Notice is an essential element of the offense of criminal trespass,

and must be proven by the state beyond a reasonable doubt at trial. See OCGA § 16-7-21 (b) (2). . . . Inherent in the statute's notice provision is a requirement that notice be *reasonable under the circumstances*, as well as *sufficiently explicit* to apprise the trespasser what property he is forbidden to enter.

(Citation omitted; emphasis supplied.) Rayburn v. State, 250 Ga. 657 (2) (300 SE2d 499) (1983); Murphey v. State, 115 Ga. 201, 202 (41 SE 685) (1902) ("explicit notice to the accused" must be given). But see Georgiacarry.Org, Inc. v. Atlanta Botanical Garden, Inc., 299 Ga. 26, 30 (1) (785 SE2d 874) (2016) (acknowledging in dicta Osborne, supra, regarding express notice in a case involving express notice). The requirement that notice be reasonable under the circumstances and sufficiently express or explicit is to ensure that there is no confusion about the message being sent to the would-be trespasser before he or she enters a particular place. See Rayburn, supra, 250 Ga. at 657-658 (2).

In this sense, while giving a person express notice through spoken or written words that his or her entry is prohibited *can* be sufficiently explicit and reasonable for purposes of OCGA § 16-7-21 (b) (2) (see, e.g., Rayburn, supra; McCrosky v. State, 234 Ga. App. 321 (1) (506 SE2d 400) (1998)), that does not mean that spoken and written words are the *only* means by which reasonable notice could be given to a would-be trespasser that would explicitly notify that

4

person that his or her entry is prohibited. See Munns v. State, 412 SW3d 95 (IV) (B) (1) (Tex. App. 2013) (locked door); State v. Merhege, 394 P3d 955, 959 (N.M. 2017) (Under New Mexico law, fencing around property provided "sufficient notice to the public that there is no consent to enter land."). Indeed, a locked door to a home generally sends a sufficiently explicit message that entry is forbidden to a possible trespasser who encounters that locked door:

> The issue here is . . . whether [Harper] had notice that [his] entry into [McDaniel's] house was forbidden. The door[ ] to the residence [was] locked. The lock[ ] would be sufficient notice to a [potential] trespasser [such as Harper] that entry was forbidden. The inherent nature of a habitation gives notice that entry is forbidden.

(Citation omitted.) Munns, supra, 412 SW3d at 99-100 (IV) (B) (1). In general, there is nothing subtle about encountering a locked door to a home when one has not been invited into or given permission to enter that locked home. The reasonable notice given and the explicit (but not express) message sent is that the uninvited person who is met by the locked door is forbidden from entering until such time as informed otherwise. It is undisputed in this case that Harper was not given a key to the home or given any sort of permission by McDaniel to enter her residence. See id. at 100 (IV) (B) (1) ("While a locked door would *certainly* qualify as notice to a naked trespasser [who had no legal rights to the

property in question], a locked door is not notice that entry is forbidden to a person who is provided a key by one with apparent authority to authorize his entry into the residence.") (citation omitted; emphasis supplied).[1] And McDaniel herself testified that she kept the door locked. See OCGA § 16-7-21 (b) (2) (notice that entry is forbidden must be given by "the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant" of the premises). Accordingly, viewed in the light most favorable to support the verdict, the record reveals that Harper had been given reasonable and sufficiently explicit notice by the owner of the premises under the circumstances here to be made aware that his entry into McDaniel's home was forbidden.[2] See id. The evidence was sufficient to show that Harper had

---

[1] The existence of a "doggy door" on the front of the locked door through which Harper entered does not change the analysis. A doggy door is just that — a smaller door at the bottom of a larger one that allows a pet dog to enter or leave the home. It is not an invitation or authorization for a human to enter the home or reach through such a door and unlock or damage the larger door so that uninvited strangers can come into one's residence.

[2] This Court granted certiorari to address the issue of *notice* with respect to trespass under OCGA § 16-7-21 (b) (2). For purposes of our analysis, we do not address the Court of Appeals' decision that the evidence supported the conclusion that Harper acted "without authority" when he entered McDaniel's residence without her consent.

received sufficiently explicit notice to support a finding of guilt under OCGA § 16-7-21 (b) (2), and the Court of Appeals erred in concluding otherwise.

Because notice need only be sufficiently explicit, and need not be express, to inform a would-be trespasser that entry is forbidden for purposes of OCGA § 16-7-21 (b) (2), to the extent that prior cases from the Court of Appeals have held that express notice is required to satisfy the terms of the statute, those cases are disapproved. See Sheehan, supra, 314 Ga. App. at 326; Osborne, supra, 290 Ga. App. at 189; State v. Morehead, 285 Ga. App. 320, 323 n.7 (646 SE2d 308) (2007); Wood v. State, 227 Ga. App. 677, 678 (490 SE2d 179) (1997); Scott, supra, 130 Ga. App. at 78 (3).[3]

Judgment reversed. All the Justices concur.

---

[3] We also note that our citation in dicta to Osborne, supra, in GeorgiaCarry.Org, Inc., supra, 299 Ga. at 30 (1), should not be read to imply that express notice is required in order for a defendant to be found guilty of trespass under OCGA § 16-7-21 (b) (2). While express notice can certainly qualify as explicit notice for purposes of OCGA § 16-7-21 (b) (2), nothing in our holding in GeorgiaCarry.Org, Inc. can be read as limiting or even addressing this Court's holding in Rayburn, supra, 250 Ga. at 657 (2), that notice need only "be reasonable under the circumstances, as well as sufficiently explicit to apprise the trespasser what property he is forbidden to enter" for purposes of OCGA § 16-7-21 (b) (2).

Decided February 19, 2018.

Certiorari to the Court of Appeals of Georgia — 338 Ga. App. 535.

Rebecca L. Grist, Solicitor-General, Sharrell F. Lewis, Donyale N. Leslie, Assistant Solicitors-General, for appellant.

Hall Hirsh Hughes, Andrew C. Hall, for appellee.