**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 13, 2025**

# In the Court of Appeals of Georgia

A25A0581 IN THE INTEREST OF: L. B., A CHILD

DAVIS, Judge.

A day of outdoor play turned tragic when one child was drowned at the hands of another. L. B., who witnessed the incident, was adjudicated delinquent for concealing the death of another and criminal trespass. On appeal, he challenges the sufficiency of the evidence underlying both counts. Because the evidence supported the trial court's findings, we affirm.

## I.

We view the evidence in light most favorable to the adjudication. See *In the Interest of I. H.*, 350 Ga. App. 394, 394-395 (829 SE2d 437) (2019). So construed, late afternoon on May 15, 2024, L. B., H. E., and N. B. were playing together when they

walked passed several no trespass signs, over and around a barbed-wire fence, and into an area locally known as the clay pits — a "blocked off" area located in Wayne County, Georgia. At some point, an argument erupted between H. E. and N. B., leading H. E. to push and drown N. B. in a pit filled with water. L. B., who witnessed the drowning, returned home without telling anyone about the incident.

During the adjudicatory hearing, Wayne County Investigator Steven Crane testified about his initial interview with L. B. In particular, regarding N. B.'s whereabouts, L. B. told Investigator Crane that

> [N. B.] had been walking down the road, and he decided at that time to turn around and go home. . . . [L. B.] said that [N. B.] walked back . . . and then that was the last . . . place he saw [N. B.]

Investigator Crane then added context:

> Q: Now, [earlier] you said it's county owned and it's blocked off. Explain to me what you mean by blocked off.
> A. Well, most of it has — it's been trampled down because people went across it, but there is some barbed wire fence that runs down most of it, and most of the drive-in intersections have been blocked by, like, culverts. And there [are] . . . no trespassing signs . . . facing the road. Now, I don't know exactly where the juveniles went into, so, but there — there is a way to block it off.
> Q. About how many [no trespassing signs] are around those pits?
> A. I couldn't — the pits is a big area, so it has multiple roads that go[ ] around the pits, so I couldn't tell you exactly how many signs are around it.

Q. How many have you seen?
A. I[ ] s[aw] three or four in the area . . . where [N. B.] went missing[.]

Following an extensive search, law enforcement located N. B.'s lifeless body at the clay pits the morning after Investigator Crane's initial interview with L. B.

Based on the evidence, the trial court adjudicated L. B. delinquent for (1) concealing the death of another person under OCGA § 16-10-31 and (2) criminal trespass under OCGA § 16-7-21 (b) (2).[1] With respect to the first offense, the trial court announced, "[T]he Court does find that the State met its burden. . . . The evidence was that [L. B.] told multiple stories which did, in fact, hinder the discovery of [N. B.]'s body in the clay pit." Likewise, the trial court found that the State met its burden as to criminal trespass. "While there may have been fences that were trampled," the trial court observed,

> there were multiple signs throughout the area that said no trespassing.
> There were, in fact, fences throughout the area. There were gates and
> culverts that were meant to stop the flow of traffic into the area, so
> despite the fact that we don't know exactly where the children may have

---

[1] Although the petition alleges L. B. violated subsection (a) of OCGA § 16-7-21, both sides take it as a given that (b) (2) is the applicable subsection here. The petition, moreover, tracks the language found in (b) (2).

entered the clay pit area, there seems — there was ample evidence that there was explicit no trespassing signage, as well as fences that would indicate to a reasonable person that no trespassing was allowed in the area.

On appeal, L. B. asserts the evidence was insufficient to sustain the delinquent acts ascribed to him. We disagree.

## II.

When a child challenges the sufficiency of the evidence in a delinquency proceeding, we analyze the matter using the same framework applied in criminal cases; that is, "we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged." (Citation omitted.) *In the Interest of A. D.*, 282 Ga. App. 586, 587 (1) (639 SE2d 556) (2006). Plus, "we indulge every contingency in favor of the verdict." (Citation omitted.) *In the Interest of J. L. H.*, 289 Ga. App. 30, 31 (656 SE2d 160) (2007).

## III.

*(1) Concealing the Death of Another Person*

There was sufficient evidence from which the trial court could find L. B. violated OCGA § 16-10-31. The statute reads:

> "[a] person who, by concealing the death of any other person, hinders a discovery of whether or not such person was unlawfully killed is guilty of a felony[.]"

Here, L. B. concealed the fact of N. B.'s death by telling Investigator Crane that, one, he had not seen N. B. since they parted ways on May 15, and, two, that N. B. returned home without visiting the clay pits that day. Both statements were untrue, and hindered law enforcement's discovery of N. B.'s death. Indeed, L. B. had known of the homicide on May 15, but kept it secret from law enforcement until May 19. The evidence, in turn, authorized the trial court to find L. B. delinquent of concealing the death of another person. See *Locklear v. State*, 317 Ga. 115, 118 (1) (891 SE2d 792) (2023) (finding evidence sufficient to support conviction of concealing death of another where defendant told law enforcement he had not seen the victim despite knowing the victim was dead).

(a) Relying on *White v. State*[2] and *Crawford v. State,*[3] L. B. seems to suggest that OCGA § 16-10-31 only criminalizes "the individual responsible for the person's death."[4] In other words, L. B. contends that — because he did not kill N. B. — the trial court erroneously extended the statute's reach to him. But OCGA § 16-10-31 does not contain the limitations L. B. claims. Instead, the statute is concerned with *conduct* that hinders the discovery of a homicide victim without regard to any link between the person who does the hindering and killing. See *Nazario v. State*, 293 Ga. 480, 491 (3) (d) (746 SE2d 109) (2013) ("[T]he gravamen of the offense is conduct that hinders 'a discovery' that a person has been unlawfully killed by concealing that death."). Thus, so long as (i) L. B.'s conduct concealed the fact of N. B.'s death, and in doing so, (ii) L. B. hindered the discovery of N. B.'s unlawful killing, the elements of OCGA § 16-10-31 are satisfied. See, e.g., *James v. State*, 274 Ga. App. 498, 500 (618 SE2d 133) (2005) (finding evidence sufficient for a jury to conclude defendant

---

[2] 287 Ga. 713 (699 SE2d 291) (2010).

[3] 267 Ga. 881 (485 SE2d 461) (1997).

[4] We say L. B. "seems to suggest" because his assertions on this point are not entirely clear. Like the State, however, we take L. B. to argue "being responsible for the person's death" is an element of OCGA § 16-10-31.

concealed the death of another person even though the defendant did not cause the death).

(b) L. B. implies in passing that he was coerced to conceal N. B.'s death "by an older child with a knife." Although coercion is sometimes a defense to criminal liability, L. B. neither developed nor supported the argument with citations to legal authority. Thus, he abandoned the argument under Ga. Ct. App. Rule 25 (a) (7).

*(2) Criminal Trespass*

The evidence supports the trial court's finding that L. B. committed criminal trespass. Under OCGA § 16-7-21 (b) (2),

> [a] person commits the offense of criminal trespass when he . . . knowingly and without authority . . .[e]nters upon the land or premises of another person . . . after receiving, prior to such entry, notice from the owner . . . that such entry is forbidden[.]

Notice, in turn, is an essential element of the offense. But *express* notice is not a requirement. See *State v. Harper*, 303 Ga. 144, 145 (810 SE2d 484) (2018). Rather, "notice [must] be reasonable under the circumstances and sufficiently express *or explicit* . . . to ensure . . . there is no confusion about the message being sent to the would-be trespasser. . . ." (Emphasis supplied.) Id. at 146.

7

In this case, Investigator Crane testified that the clay pits area is "blocked off" and "county-owned" property. He also explained that portions of the clay pits are surrounded by a barbed-wire fence (some of which is trampled); that "most of the drive-in intersections" are blocked by culverts; that no trespassing signs face the road; and that there were "three or four" no trespassing signs "in the area where [N. B.] went missing." Under these circumstances, there was sufficient evidence from which the trial court could conclude L. B. had sufficient notice that entry into the clay pits was forbidden.

Nevertheless, L. B. argues the evidence was insufficient to satisfy the statute's notice provision. "It is uncontested," he asserts, "that Wayne County never served [him] . . . express or explicit notice to not enter the property." Nor was "there . . . evidence . . . as to what roads were blocked off, how many paths existed, or what percentage of paths were trampled," L. B. claimed.

L. B. fails to appreciate, however, that the notice given need only be explicit (and not necessarily express). See *Harper*, 303 Ga. at 145-16. And the barbed-wire fence, albeit trampled at points, together with the no trespassing signs and culverts, sent L. B. a sufficiently explicit message: do not enter the clay pits. While Investigator

Crane's testimony lacked certain precision regarding signage and other obstructions,

> that some evidence offered by a witness seems . . . incomplete or uncertain, does not automatically discredit the evidence given by that witness . . . for it is the function of the [judge] to determine to what evidence [she] gives credence. It is not for us to determine or question how the [trier of fact] resolved any . . . uncertainties in the evidence.[5]

At the very least, Investigator Crane detailed the several no trespassing signs in the area where law enforcement located N. B.'s body. In sum, the State presented sufficient evidence from which the trial court could find the statute's notice provision satisfied and, therefore, that L. B. committed criminal trespass.

## IV.

The evidence presented at the adjudicatory hearing was sufficient for the trial court to find L. B. committed the delinquent acts of concealing death of another person and criminal trespass. Accordingly, we affirm the decision below.

*Judgment affirmed. Rickman, P. J., and Gobeil, J., concur.*

---

[5] *In the Interest of J. L. H.*, 289 Ga. App. at 31.