**LLOYDS AMERICA et al. v. HUNT.**

No. 4937.

Court of Civil Appeals of Texas. Texarkana.

May 20, 1936.

Rehearing Denied May 28, 1936.

862

Touchstone, Wight, Gormley & Price, and Philip L. Kelton, all of Dallas, for plaintiffs in error.

Smith & West and Stone & Wells, all of Henderson, for defendant in error.

JOHNSON, Chief Justice.

L. W. Hunt sued Lloyds America and its attorney in fact, Elliott Jones, to recover on a fire insurance policy covering his gin and machinery in the amount of $2,000. He alleged that during the policy year for which the premium had been paid the property was totally destroyed by fire, and that he had made due demand for payment which had been refused. The company defended upon the grounds: (1) That the sole and unconditional ownership in fee simple of the ground on which the gin stood was not in plaintiff; that since the issuance of the policy and in violation of its terms (2) the gin had been mortgaged; and (3) Hunt's brother had become owner of an interest therein. To the defenses 1 and 2 plaintiff pleaded waiver. To the third defense plaintiff specially denied that his brother owned any interest in the gin. These points of controversy were submitted to the jury on special issues. All issues were answered in favor of the plaintiff. Judgment was accordingly entered against defendant for the amount sued for. Defendants have prosecuted a writ of error. They will be referred to as appellants and L. W. Hunt as appellee.

The alleged errors complained of on appeal, as stated in appellants' brief, are:

"1. Error of the court in admitting evidence of the cost of gin machinery to the plaintiff nine years before the fire;

"2. Error of the court in permitting plaintiff to testify as to the market value of gin building and machinery when he was not qualified to testify as to value;

"3. Error of the court in not instructing a verdict for the defendant company and for its attorney-in-fact when there was no competent evidence in the record on the question of damages; and

"4. Error of the court in not submitting to the jury the question of the damage to plaintiff, if any, the plaintiff being the only witness to testify on the question of damage."

Each of the four points raised by appellants is dependent upon the measure of appellee's damages being the value of the property burned. Appellee has directed a counter proposition contending that there is evidence in the case, uncontradicted, rendering appellee's damages liquidated, under the provisions of article 4929, R.S., for the full amount of the policy. The evidence relied upon in support of appellee's counter proposition is stated below. Appellee on direct examination testified that the result of the fire was a total loss:

"Q. What was the extent of the damages to the building? A. Well, it was a total loss.

"Q. It was completely burned down? A. Yes, sir.

"Q. What damage was done to the machinery and other property in the gin? A. It was all destroyed."

This testimony is not in any wise contradicted. Appellants called as a witness the adjuster employed to adjust the claim and questioned him regarding other matters. And, though he testified that in his investigation he viewed the burned gin, appellants made no effort to show by him that the property was not completely destroyed by the fire, as testified to by appellee.

On cross-examination of appellee the following facts were elicited from him as to the nature and permanency of construction of the property:

"Q. Now this equipment that you had out there as you term it, that consisted of a gin house and engine and boiler and pipe for the

"steam running to the engine and the foundation and all of that, it was all a part of one gin, wasn't it? A. Yes, sir.

"Q. And connected to the ground? A. Yes, sir.

"Q. And the boiler was built around with brick? A. Yes, sir.

"Q. Or asbestos or something to keep the heat in and that was all built into the building itself? That is correct, isn't it? A. Yes, they were all connected.

"Q. And it had shafts and belts running there with pulleys connected to the engine, or did you have any belts? A. Yes, sir.

"Q. That was all completely set up in one unit? A. Yes, sir.

"Q. And to have torn them out of there it all would have required destroying some of it? A. Sir?

"Q. In taking it down it would have required destroying the brick and stuff around the boiler, is that correct? A. Tearing it down?

"Q. You could not have got the boiler out without tearing that down, could you? A. I could have.

"Q. No, you couldn't have? A. No, but I could have gotten it down without tearing the gin house down.

"Q. But a part of it, the foundation and the building itself, you know what I mean? A. No, sir.

"Q. It would require damage? A. Yes, sir.

"Q. The foundation went into the ground? A. Yes, sir.

"Q. And naturally all of it was connected to the foundation, now, was any of your steam piping in the ground? A. No, sir.

"Q. That was overhead but naturally with a use of 9 or 10 years it would have required destruction of that pipe probably, in other words you could not have used that pipe after it had been used for steam that way without tearing the threads off? A. Not after the threads were torn off unless you rethreaded it.

"Q. Was there anything—do you have some kind of a conveyor in pipes and things like that running through the house itself? A. You have seen conveyors.

"Q. In other words, it comes from the gin stand and goes from there into a little house? A. Yes, sir.

"Q. They would have to be torn apart to be taken out? A. Yes, sir.

"Q. And they were built into the building? A. Yes, sir.

"Q. As a part of the gin itself? A. Yes, sir."

This testimony was also uncontroverted. Appellants called as a witness their agent, who testified that he examined the property at the time he solicited and took the application for the policy. But no effort was made to show by him that it was not constructed in the permanent manner as testified to by appellee. It is further undisputed that the property has been regularly operated as a cotton gin since it was built in 1925.

■ There do not appear any circumstances in the record tending to discredit appellee's testimony above set out, or that would authorize its rejection as not being sufficient to establish the facts that the property was a "total loss" and that it was in nature realty, and was not "personal property" within the meaning of that term as used in article 4929, R.S., which provides: "A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property."

The term "personal property" as used in the proviso to the statute above quoted is construed to have reference to the actual or real character of the property rather than to the character of title by which it is held, and that a ginhouse and machinery constructed in the manner and circumstances as here testified to is realty and not "personal property." Orient Ins. Co. v. Parlin-Orendorff Co., 14 Tex.Civ.App. 512, 38 S. W. 60; Fidelity-Phœnix Fire Ins. Co. v. O'Bannon (Tex.Civ.App.) 178 S.W. 731, 732; Export Ins. Co. of N. Y. v. Axe (Tex. Com.App.) 58 S.W.(2d) 39, 40.

In Fidelity-Phœnix Fire Ins. Co. v. O'Bannon, supra, this court quoted with approval from Orient Ins. Co. v. Parlin-Orendorff Co., supra: "It is insisted here that the house [constructed on leased land] was personal property, and is excluded by the terms of the statute. 'Personal,' in its general sense, means simply 'movable,' 'transitory'; 'personal property' that which may be carried about with the person. It has reference to the real character of the property, and not to the title by which it is held. In this sense, a dwelling house is

not embraced within the meaning of the term 'personal property.' To give the statutory term its general signification, the object of the statute will be accomplished; to give its technical legal sense, the evil intended to be remedied will in part still prevail, and without any good reason to support it. We are of opinion that the statute should be construed to embrace houses, without reference to the question of the fee-simple title to the land."

In Export Ins. Co. of N. Y. v. Axe, supra: "The evidence showed that the engine and machinery were attached to the building, were stationary, and intended to be permanent fixtures, the gin stands were attached to the sills set in concrete in the floor, and there was no part thereof that was not attached as part of the real estate. The engine was set in a concrete foundation and the machinery attached to concrete sieves, not removable without taking apart the foundation." Held, realty within meaning of statute (article 4929) making policy liquidated demand when total loss occurs.

Upon the facts as here presented, the statute fixes appellee's damages in the contract amount of the policy, as a liquidated demand. Therefore the value of the property burned, as the measure of appellee's damages, was not properly an issue in this case, and the matters raised on the appeal by appellant, being based upon such an issue, do not present reversible error.

The judgment of the trial court is affirmed.