
FILED
November 24, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

03-14-00512-CR

# IN THE COURT OF APPEALS OF TEXAS
# THIRD DISTRICT, AUSTIN

**CRAE ROBERT PEASE**
Appellant

RECEIVED
NOV 2 0 2015
THIRD COURT OF APPEALS
JEFFREY D. KYLE

Vs.

**STATE OF TEXAS**
Appellee.

**On Appeal from the County Court at Law No. 6**
**Travis County, Texas**
**Trial Court Cause No. C-1-CR-13-220763**
**Judge Bob Perkins, Presiding**

## APPELLANT'S BRIEF ON THE MERITS

## ORAL ARGUMENT REQUESTED

Crae Robert Pease
6715 Skynook Drive
Austin, Texas 78745
(512) 538-6099
specialcrae@yahoo.com

i

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.1(a), appellant presents the following list of all parties and names and address of counsel:

**Appellant**

Crae Robert Pease
6715 Skynook Drive
Austin, Texas 78745

**Appellee**

THE STATE OF TEXAS

Counsel for Appellee

William G. Swaim III
P. O. Box 1748
Austin, Texas 78767

# TABLE OF CONTENTS

Identity of Parties and Counsel..................................................................ii

Table of Contents....................................................................................iii

Table of Authorities................................................................................iv

Statement of the case..............................................................................1

Any Statement Regarding Oral Argument...............................................1

Issues Presented.....................................................................................2

Statement of Facts..................................................................................4

Summary of the Arguments.....................................................................9

Argument..............................................................................................10

Caveat..................................................................................................40

Prayer...................................................................................................41

Certificate of Service.............................................................................42

Certificate of Compliance......................................................................42

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. State,* 846 S.W.2d 318, 319-20 (Tex.Crim.App.1993)..............…...21

*Almanza v. State,* 686 S.W.2d 157 at 171 (Tex.Crim.App. 1984).............…....36

*Baker v. State,* 123 Tex.Crim. 209, 58 S.W.2d 534, 534-35 (1933)..... ........32

*Benavidez v. State,* No. 13-07-00670-CR (Tex.App.—Corpus Christi, 2009)..29

*Benoit v. State,* 561 S.W.2d 810, 813 (Tex.Crim.App.1977)...................31, 32

*Brasfield v. State,* 600 S.W.2d 288, 295 (Tex.Crim.App.1980)...................32

*Brown v. Davis,* 123 S.W.2d 321, 325 (Tex.2002)...............................….2

*Cardinal Health Solutions v. Valley Baptist,* 643 F.Supp.2d 883
(U.S.D.C., S.D. Tex. Brownsville, 2008).............................................19

*Douglas v. California,* 372 U.S.353, 82 S.Ct. 814, 9 L.Ed. 2d 811 (1963).....34

*Drumm v. State,* 560 S.W.2d 944, 947 (Tex. Crim.App.1977)..................32

*Ex parte Auten,* 458 S.W.2d 466 (Tex.Cr.App.1970).............................34

*Ex parte Coleman,* 455 S.W.2d 209 (Tex.Cr.Ap.1970).............................34

*Ex parte Gordon,* 439 S.W.2d 354 (Tex.Cr.App.1969)............................34

*Ex parte Hope,* 374 S.W.2d 441, (Tex.Cr.App.1964).............................34

*Ex parte Marshall,* 445 S.W.2d 22 (Tex.Cr.App.1969)............................34

*Farretta v. California ,* 422 U.S. 806 (1975).........................................10

*Garcia v. Dial,* 596 S.W.2d 524, 527 (Tex.Crim.App.1980).....................28

*Gideon v. Wainwright,* 372 U.S 335, 83 S.Ct 792, 9 L. Ed 2d 799 (1963)......34

*Gillette v. State*, No. 13-12-00454-CR and 12-12-00455-CR,
(Tex.App.—Corpus Chrisi, Edinburg, 2014)..............................................24

*Janecka v. State*, 739 S.W.2d 813, 819 (Tex.Crim.App.1987)....................32

*Janecka v. State*, 823 S.W.2d 232, 232-38 (Tex. Crim.App.1990).................32

*Johnson v. Brewer & Pritchard, P.C.* 73 S.W.3d 193, 199 (Tex.2002)...........18

*Johnson v. State*, 364 S.W.3d 292, (Tex.Ct.Cr.App.—2012).......................23

*Jones v. State*, 532 S.W.2d 596, (Tex.Crim.App., 1976)..............................39

*Kenner v. C.I.R.*, 387 F.3d 689 (1968).................................................18

*Kinsey v. State*, 861 S.W.2d 383 at 385-386 (Tex.Cr.App.1993)...................31

*McKithan v. State*, 324 S.W.3d 582, 588 (Tex.Crim.App.2010). ....................20

*Malik v.* State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)....................22, 23

*Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex.2005)...................................18

*Moore v. State*, 473 S.W.2d 523, 523-24 (Tex.Crim.App.1971)....................32

*Munns v. State*, 412 S.W.3d 95, (Tex.App.—Texarkana, 2013)....................24

*National Plan Adm'rs, Inc., v. National Health Ins. Co.*,
235 S.W.3d 695, (Tex.2007).................................................................18

*Prieto Bail Bonds v. State*, 994 S.W.2d 316 ,
(Tex.App.—El Paso 1999)(pet. denied)...................................................14

*Robertson v. State*, 94 S.W.2d 861(Tex.App.—Houston [14th Dist.], 1996......12

*Salazar v. State*, 284 S.W.3d 874, 878 (Tex.Crim.App.2009)......................24

*Sanchez v. State*, 209 S.W.3d 117, 121 (Tex.Crim.App. 2006)....................36

*State v. Ford*, 158 S.W.3d 574 (Tex.App.—San Antonio, 2005)..................14

*Studer v. State* 799 S.W.2d 263, 268-73 (Tex.Crim.App.1990)...................21

*Todd v. State*, 911 S.W.2d 807, (Tex.App.—El Paso, 1995)...................13, 22

*Trejo v. State*, 280 S.W. 3d 258, 260 (Tex.Crim.App.2009)......................28

*Trejo v. State*, 313 S.W.3d870, 872 (Tex.App.—Houston [14th Dist.]
2010, pet.ref'd). ...............................................................................37

*Vanderburg v. State* 842 S.W.2d 286, at 288-289
(Tex.App.—Houston [1st} 1988)..................................................31

*Villarreal v. State*, 286 S.W.3D 321, 327 (Tex.Crim.App. 2009..................23

*Wilson v. State,* 520 S.W.2d 377, 379 (Tex.Crim.App.1975)................31, 32

*Woodward v. State,* 322 S.W.3d 648, (Tex.Crim.App. 2010)....................36

**Texas Statutes**

TEX.CODE CRIM. PROC.ANN. art. 1.05 (Vernon 1977).......................12

TEX.CODE CRIM.PROC.ANN. art. 1.14(b) (Vernon Supp. 1995)................21

TEX.CODE CRIM.PROC.ANN. art. 1.051 (Vernon Supp.1996)..................21

Texas Penal Code §30.05..........................................13, 16, 23, 38

Tex.Penal Code Ann. §32.05(b)(2)(Wst Supp.2012)...........................24

Tex.Gov't Code §25.0017(c),.....................................................13

Tex.Gov.Code, §25.006(a)........................................................13

Tex.Gov.Code, §45.001(b).........................................................14

Tex.Gov't.Code §74.056...........................................................13

Tex.Gov't Code Ann. §75.403(e)(Vernon 1988)............................................13

Tex.Loc.Gov.Code §81.002..................................................................12

Tex.Prop.Code §51.902......................................................................30

**TEXAS CONSTITUTION**

Art. 1, Sec. 10............................................2, 7, 10, 11, 12, 20, 31, 34

Art. 1, Sec. 29......................................................................35

Tex.Const., art. XVI, §1..........................................................12, 14

Tex.Const., art. XVI, §1(c)....................................................13, 14, 15

**UNITED STATES CONSTITUTION**

U.S. CONST. amend. VI.................................................................20

**References**

Black's Law Dictionary, Sixth Edition page 63......................................19

Black's Law Dictionary Sixth Edition page 64.......................................19

## STATEMENT OF THE CASE

Appellant was arrested on December 11, 2013, in the 8400 block of Dempsey and Ditmar Drive and booked into Travis county jail on the charge of criminal trespass of 10820 Gerald Allen Loop, Austin, Texas.

Appellant was tried in a jury trial in July of 2014 and it is from that conviction that he appeals.

Appellant will show this Court that the facts do not match the verdict.

Appellant will show this Court that the jury charge is in variance to the information.

## STATEMENT REGARDING ORAL ARGUMENTS

This case raises significant issues related to the trial court's erroneous exclusion of critical evidence and factual sufficiency of the evidence presented in relation to the rule set forth in *Brown v. Davis*, 123 S.W.2d 321, 325 (Tex.2002). The inclusion of oral arguments will significantly aid the decision of this Court.

## ISSUES PRESENTED

ISSUE 1: Did Judge Bob Perkins have the right to deny assistance of counsel, in violation of Appellant's inviolate right under the Texas Constitution, art. 1, Sec. 10?

ISSUE 2: Did the appointed Judge, Bob Perkins, have authority to preside over the case?

ISSUE 3: Did William G. Swaim, Travis County assistant prosecutor have the proper statutory oaths and bonds on file, in order to have authority to prosecute for the State?

ISSUE 4: Was Hallie Waller the owner or the agent of the owner of the property?

ISSUE 5: Was the information insufficient and therefore defective?

ISSUE 6: Was the jury charge in harmony with the information?

ISSUE 7: If Fannie Mae was the owner of the property at the time of the intrusion, why didn't it appear at trial?

ISSUE 8: Who was the inhabitant of the property when Appellant got the criminal trespass warning?

ISSUE 9: Did the prosecution prove the necessary elements of the information, namely, that Appellant knowingly and intentionally entered the property of another.

ISSUE 10: How harmful to Appellant was the denial of assistance counsel?

ISSUE 11:  Did the fact that the judge refused to include the affirmative defense to criminal trespass in the jury charge have any effect in the outcome?

ISSUE 12:  Did the state meet the burden of proof that Appellant trespassed on the property of another, to wit:  Hallie Waller?

## STATEMENT OF FACTS

Appellant, Crae Robert Pease, a man who, together with his wife, had been living at 10820 Gerald Allen Loop, Austin, Texas since January of 2011. Appellant had acquired title to the property through a quit claim deed issued to him by Grant Trevarthen, who had acquired interest in the property from Christopher and Jessica Andersen before the Andersens were foreclosed upon.

Appellant attempted to intervene in several suits which were filed against the Andersens, namely Jessica, which were in reference to the property, to no avail.

After an eviction against and only pertaining to Jessica Andersen, on or about May 29, 2013, during which time Appellant temporarily moved his possessions from the property, he moved back in after the Writ of Possession against Andersen had been returned to the court.

Appellant maintained his residence in the property to which he was and is the titled owner of record, until May 31, 2013, Hallie Waller, a real estate agent for Fannie Mae, called the Austin Police Department who responded, and on the urging of Ms. Waller's sister, rammed the door, forcibly entered the property and gave possession to Waller. Several days later, a criminal trespass warning was given to Appellant by Hallie Waller in the presence of APD officers.

4

Appellant knew that Ms. Waller was neither the owner nor the agent of the owner, and further, he knew that the police had become involved in a civil issue and had committed trespass when they rammed the door to gain entry.

Appellant's mail continued to be delivered to the Gerald Allen address, and after the trespass warning, he went by the home fairly regularly to keep an eye on the upkeep and to get his mail from the boxes at the curb nearby. He did not enter the home.

On December 11, 2013, Appellant was delivering a cease and desist order to the neighbor across the street when he saw a suspicious car drive slowly by. Appellant had parked his car in the driveway at 10820 Gerald Allen, but did not go near the entrance to the home. He stayed on the other side of the street, away from the house and saw the car go around again, and when the car went around the corner, he retrieved his car and left.

After the criminal trespass warning, Appellant, who was the titled owner of the property, called the APD a number of times and emailed several of the officers whose name he could find, in an attempt to understand how APD could breach the peace, ram his door and hand his property over to a real estate agent, all without court orders or warrants.

These inquiries were treated as though they constituted a threat to the APD and, unbeknownst to him, a tactical team was put in place to surveil Appellant and 10820 Gerald Allen Loop.

Appellant was followed and arrested about 2 to 3 miles from Gerald Allen and charged with criminal trespass.

The report from the officer, William Nelson[1] states that because of the threats contained in Appellant's emails, (no threats were made nor intended to be made to any police officer), Appellant was considered a high risk stop. When the three officers approached Appellant, he reached to the gear shift on the floor of the standard transmission car, and he was leaning over to engage he gear. Officer Nelson translated that movement into "I could see driver reaching with his right hand beside the right side of the seat. Because of the threats that had been made and the drier reaching I actively target the driver with my pistol until he had turned the vehicle off." In actual fact, Appellant had the barrel of Officer Nelson's pistol pushed against his head, in addition to two laser dots on his head from two other officers. Appellant feared for his life, and believes if it had not been for several persons retrieving their mail from a nearby mailbox, he would have been shot.

Appellant was taken to jail, booked for criminal trespass and issued Cause No. C-1-CR-13-220763.

---

[1] RR Vol.5, page 27 and 28

There were a number of pretrial hearings in front of the judge of Travis County Court at Law #6, Judge Brandy Mueller, but when the jury trial began on August 11, 2014, Appellant was confronted with visiting Judge Bob Perkins.

When the pretrial hearing began, attorney Adam Reposa, who had agreed to assist Appellant as standby counsel, made his appearance.[2]

A motion in limine was discussed by the parties, and Mr. Reposa was drawn back into the court,[3] wherein the court asked Reposa about hybrid counsel,[4] which quickly dissolved into a discussion of Faretta counsel between Reposa and the judge[5]. Judge Perkins ignored the request for standby counsel, in other words, denied the request, and forced Appellant to go to trial without assistance of counsel, a violation of Texas Constitution art. 1, Sec. 10.[6]

Appellant requested assistance of counsel and Judge Perkins had a discussion about hybrid counsel, not quite the same thing[7] as standby or assistance of counsel, which Judge Perkins denied to Appellant.

Appellant then asked Judge Perkins for his proper oath and assignment.[8]

---

[2] RR Vol. 2 of 5, page 4, lines 23-25, page 5, lines 1-9
[3] RR. Vol. 2 of 5, page 11, lines 18-25,
[4] Hybrid counsel is a term arising out of federal courts. The U. S. Constitution , Article the eighth states that when held to a criminal prosecution, the accused has the right to have the Assistance of Counsel for his defense. This has been construed by the federal Courts, if and when the defendant is allowed to speak for himself and still have Assistance of Counsel, to be hybrid representation.
[5] RR Vol. 2 of 5, page 12, page 13, lines 1-21
[6] RR Vol. 2 of 5, page 23, lines 14-25, page 24, lines 1-18.
[7] RR. Vol. 2 of 5, page 19, lines 20-25, page 20, page 21.

Appellant then asked Judge Perkins for a plea in bar, and Judge Perkins, sight unseen, denies the plea in bar.[9]

---

[8] RR Vol. 2 of 5, page 22, lines 1-16
[9] RR. Vol. 2 of 5, page 22, line 18-25, page 23, lines 1-6

## SUMMARY OF THE ARGUMENTS

Appellant was deprived of a constitutional right of assistance of counsel, and since Appellant did not know the procedures in court, was denied counsel which would have made a difference in the outcome of the case.

Appellant was denied the inviolate rights promised by the Texas Constitution.

Judge Bob Perkins did not fill the mandatory requirements of the office of a county court at law judge before he assumed the duties of the office, therefore, Judge Bob Perkins was not qualified to sit as a county court at law judge in this case.

William G. Swaim, III, did not meet the mandatory requirements for authority of office.

Hallie Waller was not an owner or agent of the owner and could not issue a criminal trespass warning to Appellant. The prosecution never proved who the owner was or what agency relationship Hallie Waller had with the alleged owner of the property.

The information was insufficient to charge the crime of criminal trespass of a habitation. It is fatal error when the information does not list all the elements of the crime and when it does not give the defendant notice of exactly what he is charged with.

9

# ARGUMENTS

**ISSUE 1:** <u>Did Judge Bob Perkins have the right to deny assistance of counsel, in violation of Appellant's inviolate right under the Texas Constitution, art. 1, Sec. 10?</u>

No.

Tex.Const. art.1,Sec.10. RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS. He shall have the right of being heard by himself or counsel, or both.

Attorney Adam Reposa was present in court and had been asked to be standby counsel[10]. The judge told him to wait. . The judge cites the *Faretta* case as his justification for Appellant not being allowed a standby counsel[11].

*Farretta v. California* , 422 U.S. 806 (1975) is an inappropriate case, as it is federal and does not deal with assistance of counsel, but with the ability of the defendant to represent himself in court. Appellant wanted and asked for assistance of counsel, and the Texas Constitution at art. 1, Sec. 10 states: "He shall not be compelled to give evidence against himself, and shall have the right of being heard by himself or counsel, or both." The Texas Constitution guarantees Appellant the inviolate right to represent himself and have counsel during the criminal trial. He had a right to represent himself, or appear through counsel, "or both" and he was coerced to choose between the first two alone. Judge Perkins erroneously equated standby counsel with hybrid representation.

---

[10] RR Vol.2 of 5, page 4-5, lines 23-25-, 1-9
[11] RR Vol.2 of 5, page 11, line 18-25, page 12, page 13 to line 16

10

Appellant testified that he was under duress when he was presented with Waiver of Counsel forms, thus forcing him to waive an attorney and he signed the document waiving counsel "under duress".[12] Appellant testifies the first Waiver of Attorney was signed No thank you, in German and not his signature. The document[13] is signed Neine Danke. The second waiver[14] contains his signature with the qualification, "Under duress". Neither document is binding on Appellant as they were both coerced.

Appellant requested appointment of counsel and attorney Adam Reposa was present. Appellant had the right to both his representation and that of counsel. Tex.Const. art. 1, Sec. 10 gives an accused three rights and triple cord protection which is not easily broken. Appellant was coerced to choose between the first two. The Texas Constitution has provided the triple cord protection from the inception of Texas independence and it is a forever inviolate right of the people. No court can repeal, alter, amend or abrogate the clear language and intent of the People.

No court can repeal, alter, amend or abrogate the clear language and intent of the framers of the Texas Constitution.

In all criminal prosecutions, the accused has a right of assistance of counsel for his defense. U.S. CONST. amend. VI; *see also* TEX.CODE CRIM.PROC.ANN. art.

---

[12] RR Vol. 4 of 5, page 34, lines 14-25, page 35, lines
[13] CR page 14
[14] CR page 15

1.051 (Vernon Supp.1996). An accused also has the right of being heard by himself or counsel or both. TEX. CONST. art. I, § 10; TEX.CODE CRIM. PROC.ANN. art. 1.05 (Vernon 1977). *Robertson v. State*, 94 S.W.2d 861(Tex.App.—Houston [14th Dist.], 1996

In the absence of standby counsel, the court had an obligation to admonish the defendant of the dangers of self-representation. Judge Perkins did not do this. This admonishment was not necessary in the event the Court allowed standby counsel, but when the Court denied Appellant the right to standby counsel, the Court had an obligation to admonish him of the dangers of self-representation.

Had Judge Perkins denied assistance of counsel and then admonished Appellant about the dangers of self-representation it would have been a dichotomy. However, no admonishment was given and none appears in the jury trial transcript. Appellant told the Court that it had never been his intention to waive counsel, as he wanted standby, art. 1, Sec. 10, counsel at trial. The Court denied Appellant's inviolate right to counsel, and at the same time, failed to admonish him of the dangers of proceeding *pro se*.

**ISSUE 2:** <u>Did the appointed Judge, Bob Perkins, have authority to preside over the case?</u>

No.

The prerequisites for a County Court at Law Judge are:

*Oath Requirement:* A person must take the official oath. Tex.Const., art. XVI, §1; Tex.Loc.Gov.Code §81.002.

*Statement of Officer*: Must be filed in the official records of the office before the oath can be taken. Tex.Const., art. XVI, §1(c).

*Bond Requirements*: The judge of a statutory county court must execute a bond as prescribed by law for county judges. Tex.Gov.Code, §25.006(a). The bond must be payable to the treasurer of the county in an amount set by the commissioners court of not less than $1,000.00 nor more than $10,000.00.

The qualifications, duties, and powers of a special judge are the same as for a duly elected sitting judge. Tex.Gov't Code Ann. §75.403(e)(Vernon 1988).

Tex.Gov't Code §25.0017(c), A retired or former judge may be assigned as a visiting judge of a statutory county court only if the judge has filed with the regional presiding judge an oath of office as required by this section.

The Texas Criminal Code §30.05 required the clerk to make a record of the appointment of the special judge as required by Tex.Gov't Code Ann. §30.05 (now Tex.Gov't Code §25.0017(c) to make a record of the appointment of the special judge as required by Tex.Gov't Code Ann. §30.05, showing that the judge was absent, that the judge was appointed and that the oath of office was duly administered to the special judge. *Todd v. State*, 911 S.W.2d 807, (Tex.App.—El Paso, 1995). Although the Tex.C.Cr.Pro. Art. 30.05, record by the clerk, was repealed in 1999, Appellant, nevertheless, asked the clerk, in her supplemental record, for the appointment of Judge Bob Perkins, which reflects the assignment of Perkins to his case.

The Supplemental Clerk's record, page 6-8, reflects an Order of assignment, pursuant to Tex.Gov't.Code §74.056 by Billy Ray Stubblefield on July 25, 2014,

13

naming Judge Robert A. Perkins to the County Court at Law #6 of Travis County, Texas, for a three day period beginning August 11, 2014; and Order of assignment on January 14, 2015, naming Judge Robert A. Perkins to the County Court at Law #6 of Travis County, Texas for one day beginning January 20, 2015; and an Order of assignment of Judge Robert A. Perkins to the County Court at Law #6 of Travis County, for one day beginning May 22, 2015. That completes the record of the clerk as requested.

The clerk's record does not contain an oath of office of Judge Bob Perkins. Judge Bob Perkins did not have authority to preside over this case as he failed to meet the mandatory requisites of a county court at law judge before taking the bench, and all his orders are void. *Prieto Bail Bonds v. State*, 994 S.W.2d 316 , (Tex.App.—El Paso 1999)(pet. denied); *State v. Ford*, 158 S.W.3d 574 (Tex.App.—San Antonio, 2005)

**ISSUE 3:** <u>Did William G. Swaim, Travis County assistant prosecutor have the proper statutory oaths and bonds on file, in order to have authority to prosecute for the State?</u>

No.

Willaim Swaim was appointed by Travis County Attorney David Escamilla. In order to have the authority to act, a County Attorney must be in compliance with Tex.Const., art. XVI, §§1(a)(c). In addition, the county attorney shall execute a bond payable to the governor in the amount of $2,500, in compliance with Tex.Gov.Code, §45.001(b).

14

William G. Swaim III was appointed by David Escamilla on January 25, 2013. On January 22, 2013, (three days before he was appointed), Swaim signed his Statement of Officer pursuant to the Texas Constitution art. XVI. I is at the discretion of the county attorney to require his assistant to execute a bond. Swaim has no bond, therefore, Swaim is covered under the Travis County Attorney's bond.

David Escamilla signed a Statement of Officer on January 11, 2013. David Escamilla signed the Constitutional Oath of Office on January 11, 2013. David Escamilla was issued a $2,500 bond payable to the Governor of the State of Texas which was signed on November 1, 2012, five days before he was elected to the office of Travis County Attorney. The bond is defective, as it contains no oath on the back, and must be dated after election, although it was approved in open Commissioner's Court on December 18, 2012.

If Escamilla has not completed the requisite documents prior to his assuming the office after each and every election, he does not have the authority of an officer of Travis County. If the Travis County Attorney does not have the authority of an officer, he cannot statutorily appoint an assistant who has any authority.

**ISSUE 4:** <u>Was Hallie Waller the owner or the agent of the owner of the property?</u>
No.

Hallie Waller attested to the fact that she is a realtor for Fannie Mae[15], and her Fannie Mae Master Listing Agreement was admitted in the court. This is a real estate listing contract, and does not give evidence of Fannie Mae's ownership of the property, nor does it convey ownership agency to Ms. Waller. Appellant told Ms. Waller that he was the owner of the property.[16]

Hallie Waller served Appellant with a criminal trespass warning.[17] Hallie Waller told Appellant she was a representative of Fannie Mae. Hallie Waller's sister instructed that the locked door to the property be rammed.[18] This in itself is an element of criminal trespass by the APD.

Hallie Waller was not the listing agent at the time of Appellant's arrest.[19]

Tex.Penal Code §30.05, Criminal Trespass, states that Notice means "oral or written communication by the **owner or someone with apparent authority to act for the owner,**"[20] but Notice is also (B) fencing or other enclosure obviously designed to exclude intruders. Courts have ruled that this also includes locks on the doors.

---

[15] RR Vol.5 of 5 Exhibit 7
[16] RR. Vol. 3 of 5 page 76 line 25, page 77 lines 1-2.
[17] RR Vol. 3 of 5, page 82, lines 2-5.

[18] RR Vol. 3 of 5, page 97, lines 3-15
[19] RR Vol. 3 of 5, page 102, 13-23
[20] RR Vol. 3 of 5, page 106, lines 5-11, RR Vol. 5 of 5, Defendant's Exhibit 5

16

In addition, (c) lists notice as a sign or signs posted on the property or at the entrance of the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden. Appellant told Ms. Waller that he had posted "No Trespassing" signs in the windows when the APD forced entrance to his home.

Appellant presented the Court with the definition of owner.[21] Hallie Waller was not the owner of the property, nor was it claimed she was in the information.

A discussion of Hallie Waller's lack of ownership or agency relationship is discussed.[22]

The testimony of Duane Naumann gives evidence of the abstract of title showing evidence that the last instrument in public record reflects Crae Pease as owner of the property at 10820 Gerald Allen Loop.[23]

Fraud on the court. Hallie Waller is not the owner of the property. The information doesn't claim she is the owner, nor does it claim she is the agent for the owner. Hallie Waller testifies she does not own the property and states she acted for Fannie Mae. Fannie Mae did not appear and testify that it owned the property and had charged criminal trespass. Hallie Waller did not have the

---

[21] RR Vol. 3 of 5, page 107, line 16-24
[22] RR Vol. 3 of 5 pages 122-126
[23] RR Vol. 3 of 5, page 165-173.

17

authority to issue a criminal trespass warning, nor did she have the authority to instruct the Austin Police department to forcibly enter the home of another.

Fraud on the Court: "embraces that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication". *Kenner v. C.I.R.*, 387 F.3d 689 (1968)

To be an agent of an owner requires an agency relationship. An agency relationship imposes certain fiduciary duties on the parties. But even in an agency relationship such as employer-employee, courts take all aspects of the relationship into consideration when determining the nature of fiduciary duties flowing between the parties. *National Plan Adm'rs, Inc., v. National Health Ins. Co.*, 235 S.W.3d 695, (Tex.2007).

Whether a fiduciary duty exists is a question of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex.2005). Fiduciary duties are imposed on parties to certain relationships based on the special nature of the relationships. *Johnson v. Brewer & Pritchard, P.C.* 73 S.W.3d 193, 199 (Tex.2002).

Even if Fannie Mae had been the owner, which was asserted but never proven, Hallie Waller did not have a fiduciary relationship with Fannie Mae.

Fannie Mae did not convey ownership of the property to Waller, she was merely a real estate agent with a contract to sell a property.

"This Court adopts the example of the Supreme Court of Texas in finding that even if parties agree that a contract provides that one party act as the other's agent for certain "specific" purposes, this does not mean that the contract creates an agency relationship "in all matters connected with their relationship." *Cardinal Health Solutions v. Valley Baptist*, 643 F.Supp.2d 883 (U.S.D.C., S.D. Tex. Brownsville, 2008).

Agency relationship:  An employment for purpose of representation. In establish legal relations between principal and third person. Black's Law Dictionary, Sixth Edition page 63.

Real-estate agent:  Person whose business it is to sell, or offer for sale, real estate for others, or to rent houses, store, or other building, or real estate, or to collect rent for others.  Black's Law Dictionary Sixth Edition page 64.

Hallie Waller was not a fiduciary agent of Fannie Mae, no evidence was given that Fannie Mae was the owner of the property, and the issuance of a criminal trespass warning by a party who has no agency relationship with the owner is a nullity.

**ISSUE 5:** Was the information insufficient and therefore defective?

Yes.

Both the United States Constitution and the Texas Constitution guarantee a defendant the right to notice of the criminal charges against him. U. S. Const. amend VI; Tex. Const., art 1, §10. This constitutional constraint does not prevent the State from prosecuting or the trial court instructing the jury on a lesser-included offense of the charged crime, even if the indictment does not expressly allege it. *See McKithan v. State*, 324 S.W.3d 582, 588 (Tex.Crim.App.2010). Conversely, it stands to reason that if there is a stated charge in the information, these constitutional constraints would not allow a greater charge than was in the information to be prosecuted and charged to the jury. The latter is the case in this instance.

Appellant made a point of asking for the statute with which he was charged.[24] He asked to see the statute or be given the statute number. The court refused to give him the statute or the number of the statute, saying it was in the jury charge. Appellant at no time in the proceeding knew what the charge against him was.

---

[24] RR Vol. 4 of 5, page 31, lines 9-25, page 32, page 33, page 34 lines 12

Swaim tells the court he would request a finding of habitation should the jury return a verdict of guilty. [25]

The information must state the status of the "another", i.e. "the owner or agent of the owner". The information simply lists another as Hallie Waller. Neither owner nor agent of the owner appear in the information.

When the case went to the jury, Appellant was charged with Criminal Trespass of a Habitation[26], a totally different animal than Criminal Trespass. Nowhere on the information does it mention "habitation", and had it done so, Appellant could have prepared a defense to "habitation".

The information does not state that Appellant is charged with criminal trespass, nor does it state that Appellant is charged with criminal trespass of a habitation. Neither is there a mention of the statute charged which Appellant had asked for and to which Judge Perkins had told him it would be in the jury charge.

"In Point of Error No. Two, Appellant asserts that the information does not allege criminally negligent homicide because the facts alleged show nothing more than ordinary negligence. Appellant did not file a motion to quash or otherwise object on this ground at trial. In the absence of an objection, this complaint is waived." TEX.CODE CRIM.PROC.ANN. art. 1.14(b) (Vernon Supp. 1995); *Aguilar v. State,* 846 S.W.2d 318, 319-20 (Tex.Crim.App.1993); *Studer v. State*

---

[25] RR Vol. 4 of 5, page 38, lines 19-25, page 39, lines 1-7
[26] RR page 72, lines 5-11

21

799 S.W.2d 263, 268-73 (Tex.Crim.App.1990) *Todd v. State*, 911 S.W.2d 807, (Tex.App.—El Paso, 1995).

Appellant filed a Motion to Quash Information[27], wherein at the hearing, Bill Swaim inserted: "to wit: 10820 Gerald Allen Loop, Austin, Travis County, Texas, one of the issues complained of in the motion. Appellant gave notice the information was defective, but it was not Appellant's duty to inform the state as to all aspects of the irregularities.

There is a material variance between the information and the proof at trial. The information does not state what offense Appellant is charged with, does not state who Hallie Waller might be, (owner or agent of the owner), does not state the owner of the property, and does not mention habitation.

**ISSUE 6**: Was the jury charge in harmony with the information?

No.

"The standard for determining whether the evidence is legally sufficient to support a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In *Malik v. State*, we articulated the modern Texas standard for ascertaining what the "essential elements of the crime" are; they are the elements of the offense as defined by the

---

[27] CR page 195-196

22

hypothetically correct jury charge for the case. The hypothetically correct jury charge is one that at least "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Johnson v. State*, 364 S.W.3d 292, (Tex.Ct.Cr.App.—2012).

In this instance, the charging instrument states: ....without the effective consent of another, to wit: Hallie Waller." At trial, the prosecution alleged that the owner of the property was Fannie Mae, and gave no proof as to Hallie Waller's agency relationship or ownership. This is a material variance.

The information does not contain the words "owner" or "agent of the owner", a necessary element of a criminal trespass. This is a material variance.

The charging instrument, the information, does not state what the offense is, neither the statutory charge, i.e, Tex.Penal Code §30.05, nor "criminal trespass", certainly there are no elements of criminal trespass of a habitation, or the charge of "criminal trespass of a habitation", the charge given to the jury. This is a material variance.

"We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge". *Villarreal v. State*, 286 S.W.3D 321, 327 (Tex.Crim.App. 2009)(citing *Malik v. State*, 953 S.W.2d 234,

23

240 (Tex.Crim.App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately described the particular offense of which the defendant was tried." *Gillette v. State*, No. 13-12-00454-CR and 12-12-00455-CR, (Tex.App.—Corpus Chrisi, Edinburg, 2014).

Rather than Appellant having committed criminal trespass, (he was living in the property and had keys to the door locks, and the doors were locked on the day that the APD, which, at the behest of a realtor, forcibly entered the property), Waller and APD are the parties who trespassed on Appellant's property. The doors to the residence were locked. The locks would be sufficient notice to a naked trespasser (including APD), that entry was forbidden. See Tex.Penal Code Ann. §32.05(b)(2)(Wst Supp.2012). The inherent nature of a habitation gives notice that entry is forbidden. *Salazar v. State*, 284 S.W.3d 874, 878 (Tex.Crim.App.2009). *Munns v. State*, 412 S.W.3d 95, (Tex.App.—Texarkana, 2013).

The judge begins to give the charge to the jury.[28] Judge Perkins states: Crae Pease, stands charged by information[29] with the offense of criminal trespass.....

---

[28] RR Vol.4 of 5, page 69, lines 23-25, page 70, lines 1-
[29] CR page 12

24

This is fatal error. The information does not say criminal trespass. This is a material variance.

The judge goes on:[30] "It is also an offense if the trespass is committed in a habitation or in a shelter center". This is judicial error. Nowhere in the information does the word habitation appear, and this is a greater offense than criminal trespass. The judge *sua sponte* increased the offense. This is a material variance.

Judge Perkins has a long and lengthy dialogue with Appellant during the discussion of the jury charge, and they discuss the fact that Hallie Waller is not the owner of the property.[31] The judge falsely assures Appellant that if the jury has been given evidence that Hallie Waller was not the owner of the property, he will be found not guilty. This is equivalent to: "Welcome to my web, said the Spider to the Fly."

The judge goes on to read:[32] "Effective consent includes consent by a person legally authorized to act for the owner". Nowhere in the information does the word owner appear. The word has been used throughout the trial, but, it is not charged nor shown on the information. Hallie Waller is the only name that appears on the information, and it does not claim she is the owner or agent for the owner. This is fatal error and egregious harm to Appellant. This is a material variance.

---

[30] RR Vol. 4 of 5, page 70, lines 15-17
[31] RR. Vol. 4 of 5, page 56, lines 6-25, page 57, lines 1-11
[32] RR. Vol. 4 of 5, page 70, lines 18-25, page 71, line 1

When the jury charge was being discussed, Swaim asks the court to include a finding of habitation.[33] Appellant did not object because he did not understand the significance of the action. He had requested assistance of counsel for this very purpose, and cannot be held to the premise that it was unobjected-to jury-charge. It was unlawful and illegal to enhance the charge to the jury in order to get a greater conviction than the one charged, whether it was objected to or not. This is an egregious harm to Appellant and is a material variance.

The inclusion of the word habitation throughout the trial is as follows: Swaim wrongly stated to the jury pool in *voir dire* that the offense is a Class A misdemeanor if the property was a habitation.[34] Judge Perkins tells the jury pool in *voir dire*,

> "Ladies and gentlemen of the jury, let me explain that an information has been filed in this case with the accusation that we'll be going to trail on. If you're selected as jurors, it will be your responsibility to decide whether the State has proven their case beyond reasonable doubt. I believe that it is alleged in the information that the premises involved are a habitation. If you were to find the defendant guilty beyond a reasonable doubt of that, then that would be a finding of a Class A misdemeanor."

---

[33] RR Vol. 4 of 5, page 38, lines 22-25, page 39, lines 1-8
[34] RR. Vol. 2 of 5, page 38, lines 12-13, page 57, lines 9-11

Again, during *voir dire*, the judge tells the jury pool that Class B misdemeanor would be a lesser included offense of habitation.[35]

And again, during *voir dire*, the judge tells the jury pool:

"Class B misdemeanor would be a lesser included offense of habitation. That would be a situation where if y'all had a reasonable doubt as to whether or not a habitation was involved then he would—but you have no question as to guilt otherwise, then you would be empowered to find the defendant guilty of the Class B misdemeanor. If that happened—guilt/innocence, then the second phase of the trial on punishment would be whether the punishment could be meted out for that Class B misdemeanor."

There was no charge of habitation on the information, and the judge, by his speech, again taints the jury pool with erroneous information causing Appellant egregious harm.

Surely the judge had read the information before beginning the case. If he had, and it was his job to do so, his statement to the jury pool, irrevocably tainted the jury pool with improper information. That is incurable error on the part of the judge.

There is no more mention of habitation during the trial. The word is not included in any testimony or on any evidence submitted to the jury. The only

---

[35] RR. Vol. 2 of 5, page 58, lines 15-16

references in the transcript to habitation are in the *voir dire* and the jury charge. This jury was polluted with incorrect information at *voir dire* and given the incorrect choices when it deliberated. This is egregious behavior on the part of the judge and can't be corrected.

The jury charge[36] states that one of the verdicts of the jury could be: "We, the jury, find the defendant, Crae Pease, guilty of the offense of criminal trespass of a habitation as alleged in the information."

The charge goes on to say[37], "We the jury find the defendant, Crae Pease, not guilty of the offense of criminal trespass. If that is your verdict, then that's the one the foreperson would sign and print their name."

Unbelievable! Find him guilty of criminal trespass of a habitation or find him not guilty of criminal trespass!

The trial court has no jurisdiction to convict a defendant of an offense not charged in an information unless the offense is a lesser-included offense of the crime charged. *Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex.Crim.App.1980), *see also Trejo v. State*, 280 S.W. 3d 258, 260 (Tex.Crim.App.2009)(setting out that "subject matter jurisdiction requires both a general grant of authority to the trial court and a charging instrument that invokes that jurisdiction over the particular case")

---

[36] RR Vol. 4 of 5, page 75, lines 4-15
[37] RR Vol. 4 of 5, page 75, lines 16-19

28

In this instance there is no information charging Appellant with the offense of criminal trespass of a habitation, the offense of criminal trespass of habitation is not a lesser-included offense, in fact, it is a greater offense than criminal trespass. The court was without jurisdiction to enter a judgement convicting Appellant of an offense not charged in the information. *Benavidez v. State,* No. 13-07-00670-CR (Tex.App.—Corpus Christi, 2009).

There is no question that the jury charge was in variance to the information.

There is no question that the jury pool was tainted.

There is no question that the judgment should be voided by this Court.

**ISSUE 7:   If Fannie Mae was the owner of the property at the time of the intrusion, why didn't it appear at trial?**

Appellant makes the argument[38] that if Fannie Mae is the owner of the property, why hasn't Fannie Mae shown up to claim it.   In point of fact, Fannie Mae did not have clear title to the property, and on April 21, 2015, Fannie Mae sued Grant Trevarthen and Crae Robert Pease in the 200th Judicial District of Travis County, Texas, Cause No. D-1-GN-15-001573 for quiet title.

If Fannie Mae held clear title on December 11, 2013, why did it file suit for quiet title on April 21, 2015?

---

[38] RR Vol. 4 of 5, page 88, lines 1-4

**ISSUE 8:** <u>Who was the inhabitant of the property when Appellant got the criminal trespass warning?</u>

If Appellant committed criminal trespass of a habitation, the Court needs to know who was inhabiting the residence at the time? When the APD and Waller broke in, Appellant was the inhabitant of the property. Can one commit criminal trespass of a habitation when he is lives on the property? If the prosecution wanted to delude the jury into believing the property was a habitation, who was the inhabitant? Was it Fannie Mae, was it Hallie Waller? On the day that APD were stalking him and he did not go in the house, the "habitation" had been sitting vacant for 7 months.

**ISSUE 9:** <u>Did the prosecution prove the necessary elements of the information, namely, that Appellant knowingly and intentionally entered the property of another?</u>

No.

Appellant believed so strongly in his right to title, that it could not be proven that he knowingly and intentionally entered the property of another.

Appellant had a quit claim deed which was the last deed filed in public record[39]. He had a Judicial Finding of Fact and Conclusion of Law filed in public record, which complies with Tex.Prop.Code §51.902.

---

[39] CR pages 653-655, Abstractor's Certificate of Abstract.

30

Appellant lived in the house for 3 years until the APD forcibly entered the property. Everyone knew he lived there. All anyone had to do was look in public records and see the last one to hold deed to the property.

There is no question that Crae Robert Pease was the titled owner of the property on the fateful day the man with the battering ram came.

It is not enough to say the property of another, the "another" must be identified as either the owner or the agent of the owner.

The Texas Legislature understood it was protecting the "property of another" hose "ownership" and concomitant rights are exclusive against intruders who have no right to possession whatsoever. *Vanderburg v. State* 842 S.W.2d 286, at 288-289 (Tex.App.—Houston [1st} 1988)

Criminal trespass cases obviously presuppose that the 'property of another' contemplates 'ownership' in the sense of 'belonging to' 'possessed by' or 'held by' some person other than the alleged trespasser who is bereft of any such 'ownership'. *Kinsey v. State*, 861 S.W.2d 383 at 385-386 (Tex.Cr.App.1993) (Clinton, J. concurring).

> "Article I, section 10 of the Texas Constitution "guarantees an accused the right to be informed of the nature and cause of the accusation against him in a criminal prosecution." *Ward v. State,* 829 S.W.2d 787, 794 (Tex.Crim.App.1992). This information must come from the face of the indictment. *Id; see e.g. Benoit v. State,* 561 S.W.2d 810, 813 (Tex.Crim.App.1977); *Wilson v. State,* 520 S.W.2d 377, 379 (Tex.Crim.App.1975). The accused is not required to look elsewhere.

*Baker v. State,* 123 Tex.Crim. 209, 58 S.W.2d 534, 534-35 (1933) (indictment alleging that defendant unlawfully possessed an unspecified narcotic gave insufficient notice). When writing on this notice requirement, then Presiding Judge Onion stated for the Court of Criminal Appeals:

> It is, of course, not sufficient to say that the accused knew with what offense he was charged, but the inquiry must be whether the charge in writing furnished that information in plain and intelligible language.

*Benoit v. State* , 561 S.W.2d 810, at 813; *Moore v. State*, 473 S.W.2d 523, 523-24 (Tex.Crim.App.1971).

This fundamental guarantee enables the accused to learn in advance of trial, and with reasonable certainty, the charge against him so that he can properly prepare his defense. *Wilson,* 520 S.W.2d at 379. "[T]he accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish." *Brasfield v. State,* 600 S.W.2d 288, 295 (Tex.Crim.App.1980), *overruled on other grounds, Janecka v. State,* 739 S.W.2d 813, 819 (Tex.Crim.App.1987); *Drumm v. State,* 560 S.W.2d 944, 947 (Tex. Crim.App.1977).

If the indictment affects the defendant's ability to prepare his defense, then it is a defect of substance and the motion to quash should be granted. *Janecka v. State,* 823 S.W.2d 232, 232-38 (Tex. Crim.App.1990)

Since the information in this case named Hallie Waller, not as owner or agent of the owner, the state had the burden of proving she had a greater right to possession than the man who was living there.

The state made the case that the owner of the property was Fannie Mae, not Ms. Waller, however, in the information Hallie Waller was described as "another". This connotes ownership or greater right to ownership than Appellant.

How did the state prove its case when it continued to say Fannie Mae owned the property, not Appellant. The information did not reflect the name of Fannie Mae, it reflected the name of Hallie Waller, as "another".

During witness testimony, Ms. Waller, when asked who was listed as the owner by TCAD, stated "Fannie Mae".[40] At no time did Hallie Waller claim she was the owner of the property. All times Ms. Waller said she was acting on behalf of Fannie Mae.

The state did not amend the information to reflect Fannie Mae, nor did it prove a fiduciary relationship between Ms. Waller and Fannie Mae.

In Bill Harthcock's testimony, when he was asked about ownership, he replied, "All of the factors that I saw indicated that Mr. Pease was the owner. All the public records indicated so.[41]

The prosecution would have the jury believe that the last title appearing in public record does not indicate ownership of the property, and that Hallie Waller's real estate contract supersedeas public record. This is an incorrect legal conclusion, but it was sufficient to confuse the jury.

---

[40] RR Vol. 3 of 5, page 129 line 7
[41] RR Vol. 4 of 5, page 16, line 5-7

33

**ISSUE 10:** <u>How harmful to Appellant was the denial of assistance of counsel?</u>

**Extremely harmful**

Appellant asked for and was refused standby counsel in the trial of this case. The Texas Constitution at art. 1, Sec. 10 guarantees the right to be heard by himself or counsel, or both. Judge Perkins denied this inviolate constitutional right to counsel. The reason Appellant wanted standby counsel is, although he knew his case well, he is ignorant in trial procedure, i.e., how and when to object, how to preserve issues for appeal. As a result, he was grievously harmed by the lack of counsel and the judge denied him a guaranteed constitutional right.

In addition to denying him the right to counsel, the judge did not admonish him of the dangers of proceeding to trial without counsel.

The right to the assistance of counsel is applicable to both the trial [*Gideon v. Wainwright*, 372 U.S 335, 83 S.Ct 792, 9 L. Ed 2d 799 (1963); *Ex parte Auten*, 458 S.W.2d 466 (Tex.Cr.App.1970); *Ex parte Hope*, 374 S.W.2d 441, (Tex.Cr.App.1964)] and the appeal [*Douglas v. California*, 372 U.S.353, 82 S.Ct. 814, 9 L.Ed. 2d 811 (1963); *Ex parte Coleman*, 455 S.W.2d 209 (Tex.Cr.Ap.1970); *Ex parte Gordon*, 439 S.W.2d 354 (Tex.Cr.App.1969); *Ex parte Marshall*, 445 S.W.2d 22 (Tex.Cr.App.1969)] of a criminal case.

Appellant asked the judge for assistance of counsel and was refused, a denial of a constitutional right and right to due process.

Appellant is also entitled to assistance of counsel to write an appeal. Appellant was denied that right as well. Is that egregious harm to Appellant? Most certainly.

Appellant was twice presented with forms which waived his right to counsel. Since he did not believe he needed an attorney appointed during the hearings phase of this charge, and he was not ever going to make a plea, at first, he signed the form, Nein Danke,[42] as he did not want to waive his right to counsel. When Swaim discovered that Appellant had not agreed to the form, Swaim threatened him with contempt of court and jail if he did not sign it. As a result, Appellant signed "under duress". [43] Swaim could not consider that a legal binding document when it clearly preserves Appellant's right.

Appellant asserts that the practice of the criminal courts to coerce an accused to sign a waiver of attorney is unconstitutional. The Texas Constitution, art. 1 Sec. 10, guarantees the right to the accused in a criminal trial of being heard by himself or counsel, or both. Yet, it is a standard policy and practice of the criminal courts in Texas to compel a defendant to sign a waiver of attorney form at the beginning of appearances in a criminal court in violation of the constitution.

**The Texas Constitution art. 1, Sec. 29, PROVISIONS OF BILL OF RIGHT EXCEPTED FROM POWERS OF GOVERNMENT; TO FOREVER REMAIN INVIOLATE. To guard against transgressions of the high powers**

---

[42] CR page 14
[43] CR page 15

**herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.**

Appellant asserts that the mere fact that this form is printed and a defendant is compelled to sign it in the early stages, or at any point of the prosecution, is unconstitutional. The rights enumerated in the Texas Bill of Rights are inviolate. Inviolate means untouchable, unsullied, unbroken, pure, intact, unscathed, unharmed. In other words, inviolate rights cannot be signed away, they are always there. No signature on a form titled Waiver of Counsel could do away with or interfere with inviolate rights. It is not possible. No matter what, inviolate rights are always there.

*Woodward v. State,* 322 S.W.3d 648, (Tex.Crim.App. 2010) sets the egregious harm standard as it applies to unobjected-submission of unindicted offense in jury charge. The degree of harm must be evaluated in light of the entire record. Under the Egregious harm standard, the court reviews the alleged charge error by considering (1) the entirety of the charge itself, (2) the evidence, (3) the arguments of counsel, and (4) other relevant information revealed by the record. *See Sanchez v. State,* 209 S.W.3d 117, 121 (Tex.Crim.App. 2006); *Almanza v. State,* 686 S.W.2d 157 at 171 (Tex.Crim.App. 1984).

"The trial court charged the jury on criminal trespass of a habitation—an offense that was neither expressly charged in the information nor implicitly

36

charged in the indictment as a lesser-included offense of the crime charged. In point of fact, it is a greater offense than criminal trespass." *See Trejo v. State*, 313 S.W.3d870, 872 (Tex.App.—Houston [14th Dist.] 2010, pet.ref'd).

During *voir dire* Swaim states[44], "This offense is a Class A misdemeanor if the property was a habitation. Habitation. And in that case the penalty is potentially up to a year in jail and a $4,000 fine. Otherwise, criminal trespass is a class B misdemeanor, 180 days, and $2,000. That's the maximum punishment for either of those two versions of this offense." (There is further discussion with the jury pool on the Class A and Class B misdemeanors. **RR** Vol. 2 of 5, page 38, lines 12-18, page 56, lines 21-25, page 57, lines 2-8, page 57, lines 9-16. At page 57, line 25 and page 58, lines 1-4, Swaim tells the jury it is alleged in the information that the premises involved are a habitation. This constitutes absolute prosecutorial misconduct.

Swaim goes on planting erroneous seeds in the jurors mind at RR Vol. 2 of 5, page 58, lines 15-24.

The Court told the jury pool at RR Vol. 2 of 5, page 58, lines 15-24, that the Class B misdemeanor would be a less included offense of habitation. Again,

---

[44] RR Vol.2 of 5, page 38, lines 12-18.

poisoning the jury pool. There was no charge of criminal trespass of a habitation. The word is not in the information, but it is in the jury charge.

**ISSUE 11**: <u>Did the fact that the judge refused to include the affirmative defense to criminal trespass in the jury charge have any effect in the outcome?</u>

It can be no clearer that the court committed error than the argument Appellant offered concerning "the mistake of error".[45] When Appellant asks for instruction to be given on an affirmative defense[46], the court goes to great lengths to explain to him[47]why that would be to his detriment, and Appellant explains[48] that he wants the jury to be aware that it is a defense to criminal trespass if he believed himself to be the owner of the property. The court deflected and won't agree to the jury knowing they can find him not guilty if they believed him when he over and over expressed he was the owner of the property. The court committed error by not including the affirmative defense.

Swaim joined in and objected to the jury being told of the affirmative defense.[49]

The Texas penal statute for criminal trespass is Texas Penal code 30.05. The jury charge included the definition of "habitation" which is not applicable in this instance. The jury charge starts out that Crae Pease stands charged by information

---

[45] RR Vol. 4 of 5, page 39, lines 9-25, page 40, page 41, page 42
[46] RR Vol. 4 of 5, page 42, line 25, page 45, lines 23-25, page 46, line 1
[47] RR Vol. 4 of 5, page 44, lines 6-20
[48] RR Vol. 4 of 5, page 44, lines 21-25
[49] RR Vol. 4 of 5, page 46, lines 2-25, page 47, page 48,pag 49, page 50, page 51, page 52, page 53, page 54, page 55, page 57, page 58, page 59,

38

with the offense of criminal trespass...[50] and goes on to state that "you will find the Defendant guilty of the of Criminal Trespass of a Habitation as alleged in the information".[51] Talk about duplicity! He is charged with criminal trespass, but we want you to find him guilty of criminal trespass of a habitation.

*Jones v. State*, 532 S.W.2d 596, (Tex.Crim.App., 1976) is the seminal case on the definition of habitation. Appellant's property was his residence and does not meet the criteria as laid out in Jones. The state threw in the term "habitation" in order to make the offense worse than it was, thereby elevating the punishment level from Misdemeanor B to Misdemeanor A.

The jury was confused as to ownership, had no understanding of the deficiencies of the information, and only given the choice of finding him guilty of criminal trespass of a habitation or not guilty of criminal trespass.

Judge Perkins did not include in the jury charge that a defense to criminal trespass is the belief that one owns the property, whether it was legal or not.

The jury returned the verdict of "Guilty of the offense of criminal trespass of a habitation as alleged in the information." [52]

The other document given to the jury, their other choice was, "Not Guilty of the offense of criminal trespass."[53]

---

[50] CR page 435
[51] CR page 437, complete jury charge is CR 435 to 440
[52] CR 441
[53] CR 442

Then to compound the travesty, the jury is given the Court's Charge on Punishment, which reflects the offense of Criminal Trespass of a habitation.[54]

Of course, the jury brought back a punishment assessed on the charge of Criminal Trespass of a habitation.[55]

**ISSUE 12**:   Did the state meet the burden of proof that Appellant trespassed on the property of another, to wit: Hallie Waller?

No

When the state named Hallie Waller, as the "another" as in "property of another", did the state meet its burden of proof that Appellant trespassed on property owned by Hallie Waller? No. Not even Hallie Waller claimed it was her property or she had a superior right to the property, she only claimed she was a real estate agent and thought she had the right to sell it for someone else.

The state never named someone else, the state named Hallie Waller as the "another" on the information. The state did not meet its burden of proof.

**CAVEAT**

In the interest of judicial economy, Appellant has not enumerated the scores of instances of cumulative prosecutorial conduct which were rampant and replete in this trial. Should the 3rd Court of Appeals find that it does not have enough

---

[54] CR 443
[55] CR 444

evidence to reverse and render, Appellant reserves the right to allege further misconduct in his Motion for En Banc hearing.

## PRAYER

Appellant, Crae Robert Pease, respectfully, for the reasons stated above, asks the Court to reverse the judgment of the trial court and render a judgment of not guilty.

Respectfully submitted,

Crae Robert Pease
6715 Skynook Drive
Austin, Texas 78745
(512) 538-6099
specialcrae@yahoo.com

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 9,802 words (counting all parts of the document). The body text is in 14 font, and the footnote text is in 12 point font.

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that I have served a true and correct copy of the above and foregoing document n all counsel of record via electronic mail n accordance with the requirements of the Texas Rules of Civil Procedure, Rule 21a on this the 20th day of November, 2015